UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

                                          Case No. 24-23028-LMI

BH DOWNTOWN MIAMI, LLC and
340 BISCAYNE OWNER LLC                    Chapter 11

Debtors.                                  (Jointly Administered)
_____ /


**JOINT DISCLOSURE STATEMENT OF**
**340 BISCAYNE OWNER LLC AND BH DOWNTOWN MIAMI, LLC**


**Pardo Jackson Gainsburg & Shelowitz, PL**
*Counsel for Debtors*
100 Southeast 2nd Street, Suite 2050
Miami, Florida 33131
Telephone: (305) 358-1001
Facsimile: (305) 358-2001
Email: LJackson@pardojackson.com
       LLovell@pardojackson.com
       sramos@pardojackson.com

By: */s/ Linda Worton Jackson*
       Linda Worton Jackson
       Florida Bar No. 843164
       Linsey M. Lovell
       Florida Bar No. 121581

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

I – DEFINITIONS ........................................................................................................... 3

II – PRE-PETITION EVENTS ........................................................................................ 6

III – POST-PETITION EVENTS ................................................................................... 7

IV – FINANCIAL INFORMATION ............................................................................... 8

V – VOIDABLE TRANSFERS AND PREFERENCE ANALYSIS; LITIGATION CLAIMS .... 8

VI – OBJECTIONS TO CLAIMS .................................................................................. 8

VII – MEANS OF EFFECTUATING PLAN AND RISK ANALYSIS ......................... 9

VIII – CLAIMS AND THEIR TREATMENT UNDER THE PLAN ............................. 9

IX – POST-CONFIRMATION CONTROL OF DEBTOR ............................................ 12

X – EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................ 12

XI – LIQUIDATION ANALYSIS .................................................................................. 12

XII – CONFIRMATION REQUEST .............................................................................. 13

XIII – RISK ANALYSIS ................................................................................................ 14

XIV – MISCELLANEOUS PROVISIONS .................................................................... 14

XV – CONCLUSION ...................................................................................................... 15

Debtors-in-Possession, **340 BISCAYNE OWNER LLC** and **BH DOWNTOWN MIAMI LLC** ("Debtors"), submit their Joint Disclosure Statement ("Disclosure Statement") to their Creditors and other parties in interest. A hearing on confirmation of the attached Plan is to be scheduled by the Court. The approval of the Disclosure Statement is not tantamount to a decision by the Court on the merits of the Plan.

## INTRODUCTION

This Disclosure Statement is submitted pursuant to the requirement imposed on the proponent of a Plan by 11 U.S.C. Section 1125. The purpose is to disclose information deemed to be material, important, and necessary for the Creditors to arrive at a reasonably informed decision in exercising their right, or to vote for acceptance or rejection of the Plan (the "Plan"). This Disclosure Statement should be read in conjunction with the accompanying Plan. The Plan is a legally binding document once it is approved by the Court and should be read in its entirety. Accordingly, creditors may wish to consult with their own attorney to understand the Plan more fully.

On December 13, 2024 ("Petition Date"), **340 BISCAYNE OWNER LLC** and **BH DOWNTOWN MIAMI LLC** filed voluntary petitions (each a "Petition") in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"). **340 BISCAYNE OWNER LLC** and **BH DOWNTOWN MIAMI LLC** have continued to operate their business affairs as Debtors-in-Possession pursuant to Section 1108 of the Bankruptcy Code.

THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT WAS PREPARED BY DEBTORS, UNLESS SPECIFICALLY STATED TO BE FROM OTHER SOURCES. NO REPRESENTATIONS, OTHER THAN THOSE SET FORTH HEREIN, CONCERNING DEBTORS, PARTICULARLY AS TO FUTURE BUSINESS

1

OPERATIONS OR VALUE OF THEIR PROPERTY, IS AUTHORIZED OR WARRANTED BY
DEBTORS. THE READER SHOULD NOT RELY ON ANY ORAL OR OUTSIDE
REPRESENTATION BY ANY AGENT OF DEBTORS IN DECIDING TO VOTE FOR OR
AGAINST THE PLAN. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO
SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN THOSE CONTAINED IN THIS
STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR
DECISION, AND SUCH OTHER ADDITIONAL REPRESENTATIONS AND
INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR DEBTORS, WHO IN TURN
SHALL DELIVER SUCH INFORMATION TO THE UNITED STATES TRUSTEE FOR SUCH
ACTION AS MAY BE DEEMED APPROPRIATE.

You are urged to carefully read the contents of this statement before making your decision to accept or reject the Plan. Particular attention should be directed to the provisions of the Plan affecting or impairing your rights as they presently exist. The terms used herein have the same meaning as in the Plan unless the context hereof requires otherwise.

If the Court deems it necessary Creditors may vote on the Plan by filling out and mailing the accompanying ballot form to the Bankruptcy Court. The Court will set a deadline to file Ballots, in order to be considered and counted. As a Creditor, your vote is very important. *In order for the Plan to be accepted, of the ballots or votes cast, Creditors that hold at least 2/3 in amount and more than 1/2 in number of the allowed claims of impaired classes must accept the Plan.* You are, therefore, urged to fill in, date, sign and promptly mail the enclosed ballot which has been furnished to you. Please be sure to properly complete the form and legibly identify the name of the Claimant or interest holder. You are advised that Debtors may be afforded the right under the Bankruptcy Code to have the Plan confirmed over the objections of dissenting Creditors consistent

2

with the limitations set forth in the Bankruptcy Code, as further discussed below.

The Debtors believe that there is no class of claims eligible to vote to accept or reject the Plan, because no class of claims is impaired.

## I – DEFINITIONS

The following terms and phrases, as used hereinafter, shall have the following meanings:

1.1    "340" means 340 Biscayne Owner LLC, debtor and debtor-in-possession in Case no. 24-23025-LMI.

1.2    "Administrative Claim" means a claim allowed under Section 503(b) of the Bankruptcy Code that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code.

1.3    "Allowed Claim" means (1) any claim listed in the Debtor's Schedules as filed in connection with its Bankruptcy and not scheduled as unliquidated, contingent or disputed, and/or (2) any claim against the Debtor, proof of which was timely filed on or before the bar date established by Order of the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c) for claims against the Debtor's estate, against which filed claim no objection to the allowance thereof has been interposed, or as to any such objection there has been a Final Order entered and/or (3) any claim against the Debtors which is reduced to writing and is consented to by the Debtors and liquidated in an amount, which writing has been approved by a final Order.

1.4    "Allowed Priority Claim" means that portion of an Allowed Claim entitled to priority under Section 507(a)(3), (4) (6) and (8) of the Bankruptcy Code.

1.5    "Allowed Secured Claim" means an Allowed Claim of a creditor secured by a "Lien," as that term is defined in Section 101(37) of the Bankruptcy Code against any "property" of the Debtor's estate, but only to the extent of the "value," as determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012 or as otherwise

3

agreed to, of such creditors interest in such estate's interest in such property, but excluding claims under Section 506(b).  In accordance with the definition set forth in Section 506(a) of the Bankruptcy Code, an "Allowed Secured Claim" specifically excludes that portion of an Allowed Claim of a creditor having a Lien against any property of the Debtor's estate to the extent that the value of such creditor's interest is less than the amount of such allowed claim.  Only liens on property of the estate of the Debtor or on the proceeds thereof which are valid, perfected, and enforceable under applicable law and not subject to avoidance under the Bankruptcy Code or applicable non-Bankruptcy Law shall be an Allowed Secured Claim.

1.6     "Allowed Tax Claim" means any Allowed Claim of a taxing authority entitled to priority treatment under Section 507(a)(8) of the Bankruptcy Code.

1.7     "Allowed Unsecured Claim" means any Allowed Claim which is not an Administrative Claim, an Allowed Priority Claim, or an Allowed Secured Claim.

1.8     "BH" means BH Miami Downtown, LLC, debtor and debtor-in-possession in Case no. 24-23028-LMI.

1.9     "Chapter 11 Case" means the jointly administered Chapter 11 cases of the Debtors.

1.10    "Cirrus" means Cirrus 340BB Lender LLC and Cirrus Real Estate Funding LLC, collectively.

1.11    "Claimant" means the holder of a claim.

1.12    "Confirmation Date" means the date in which the Confirmation Order is entered on the Docket by the Bankruptcy Clerk.

1.13    "Confirmation Order" means an Order of the Bankruptcy Court confirming the provisions of the Plan of Reorganization, and any amendments or modifications thereto, pursuant to 11 U.S.C. Section 1129 of the Bankruptcy Code.

4

1.14    "Continuing Operations" means the ongoing business operation and such other businesses in which the reorganized Debtors may engage from time to time.

1.15    "Debtor(s)" means, individually or collectively as the context requires, 340 Biscayne Owner LLC and BH Downtown Miami, LLC.

1.16    "Disputed Claim" means any Claim designated as disputed, contingent or unliquidated in the Debtor's Schedules filed in connection with this Bankruptcy Case, or any Claim against which an objection to the allowance thereof has been, or will be, interposed, and as to which no Final Order has been entered.

1.17    "Effective Date" means the first date on which payments are made to Creditors holding Allowed Claims, which shall be no later than 90 days after entry of the Confirmation Order.

1.18    "Estate(s)" means, individually, the estate of each Debtor in the Chapter 11 Case and, collectively, the estates of both Debtors in the Chapter 11 Case, created pursuant to Section 541 of the Bankruptcy Code.

1.19    "Final Order" means an Order or Judgment entered by the Bankruptcy Court, or another Court of competent jurisdiction, in connection with the Debtor's reorganization case, which has not been reversed, stayed, modified, or amended and as to which the time to appeal or to seek certiorari, review or rehearing has expired, as to which no petition for certiorari, review or rehearing is pending or as to which any right to appeal or to seek certiorari, review or rehearing has been waived in writing in a manner satisfactory to the Debtor.

1.20    "Plan" means the Plan of Reorganization, a copy of which is attached hereto as **Exhibit "A,"** including any amendments or modifications thereto.

1.21    "Priority Claim" means a claim which qualifies for priority treatment under Section

5

507(a)(3), (4) or (6) of the Bankruptcy Code, other than Administrative Claims and Tax Claims.

1.22    "Pro Rata" means in the same proportion as each creditor's Allowed Claim bears to the total claims of the class; i.e., a creditor's pro rata distribution shall be a percentage of the total funds available for distribution which is equal to the amount of the creditor's claim, divided by the sum of (a) the total amount of all Allowed Claims and (b) the amount of all Disputed Claims.

1.23    "Property" means the real property located at 340 Biscayne Boulevard in Miami, Florida as well as the improvements located thereon which house a hotel, commonly known as Holiday Inn Port of Miami-Downtown.

1.24    "Record Date" means (a) for the purpose of voting on the Plan, the date of entry of an Order approving the Disclosure Statement with respect to the Plan, and, (b) for the purpose of any distribution to holders of an allowed interest under the Plan, the Confirmation Date.

1.25    "Secured Creditor" means the holder of an Allowed Secured Claim.

1.26    "Tax Claim" means a claim filed by a Taxing Authority alleging priority status under Section 507(a)(8) of the Bankruptcy Code.

1.27    "Unsecured Creditor" means the holder of an Allowed Unsecured Claim, other than an Administrative Claim, Priority Claim, Secured Claim or Tax Claim.

## II – PRE-PETITION EVENTS

340 is the fee simple owner of the real property located at 340 Biscayne Boulevard in Miami, Florida (the "Land") as well as the improvements located thereon (the "Building"), which house a hotel, commonly known as Holiday Inn Port of Miami-Downtown, (the "Hotel") (the Land, the Building and the Hotel are, collectively, the "Property").

The issues that gave rise to this bankruptcy filing are related to the unpaid mortgage debt due to Cirrus 340BB Lender LLC and Cirrus Real Estate Funding LLC (collectively, "Cirrus"),

consisting of a principal amount of $70 Million, plus interest.

BH Downtown Miami, LLC ("BH") owns 100% of the outstanding membership interests in 340 Biscayne. The membership interest in 340 is BH's only asset.  Prior to the filing of the instant case, Cirrus scheduled an auction of BH's membership interest in 340, which auction was to be conducted on December 17, 2204.

### III – POST-PETITION EVENTS

Since the Petition Date, 340 has continued to operate the Hotel as a debtor-in-possession. The Hotel is operated by a Manager pursuant to a management agreement under the Holiday Inn flag pursuant to a licensing agreement.  The Hotel has operated at a profit during the Chapter 11, and the Debtors have paid all of their debts as they become due.

340 has also continued its efforts towards recertification of the Building.  This process has required (a) preparation for and attendance at multiple hearings before Miami City regulatory boards, (b) extensive correspondence with the City of Miami Building Department, and (c) supervision of planning and engineering associated with the recertification.

The Debtors also retained a broker, Hilco Real Estate, LLC, to market the Property for sale. Upon closing of the sale of the Properties, the creditors will be paid in accordance with the Plan. Debtors shall have no further operation upon the closing of the transaction.  340 anticipates filing a Motion to Approve Sale Approve Sale of Real Property Free and Clear of all Liens, Claims and Encumbrances Pursuant to 11 U.S.C. § § 363(F) and 105 prior to the Confirmation Date.

Debtors also filed an Adversary Complaint and Objection to Claims against Cirrus.  In the Adversary Proceeding the Debtors object to the claims filed by Cirrus against each of the Debtors and also seeks damages in excess of $70 Million for breach of contract, fraud in the inducement, usury, and other claims.  The Adversary Proceeding is scheduled to go to trial the week of February

9, 2026.

## IV – FINANCIAL INFORMATION

The source of the financial information for this Disclosure Statement and accompanying Plan is from reports and financial statements of Debtors, Debtor-in-Possession Monthly Operating Reports, and Debtors' accountants and agents. The aforementioned information has been compiled through the present.

## V – VOIDABLE TRANSFERS AND PREFERENCE ANALYSIS; LITIGATION CLAIMS

There are currently no known or existing voidable transfers that Debtors have been a party to within the year prior to Bankruptcy. Any other payments made during the preference period were made in the ordinary course of Debtors' operations.

The only pending claims are the affirmative claims against Cirrus in the Adversary Proceeding, pursuant to which Debtors anticipate recovering significant monetary damages, providing additional funds to the estate for purposes of paying Claims. The Debtors do not anticipate any other litigation.

## VI – OBJECTIONS TO CLAIMS

Pursuant to the Plan, Debtors may object to any scheduled claim or Proof of Claim filed against Debtors. Such an objection shall preclude the consideration of any claim as "allowed" for the purposes of timely distribution in accordance with the Plan. Any objections by Debtors have been, or will be, filed with the Bankruptcy Court under separate pleading. The Debtors have one pending objection against Cirrus, the only creditor in Classes 1 and 4.

## VII – MEANS OF EFFECTUATING PLAN AND RISK ANALYSIS

340 will sell the Property by private sale or auction, to a purchaser free and clear of all liens, claims and encumbrances, pursuant to Section 363(f) of the Bankruptcy Code, with any liens, claims and encumbrances to attach to the proceeds of the sale. The proceeds of the sale will be used to make the distributions under the Plan. The Property has been appraised at more than $200 Million.

Debtors believe that the Plan provides the best value for the creditors' claims and is in their best interest since all allowed claims shall be paid in full. Debtors, with the assistance of their professionals, have prepared the Liquidation Analysis attached hereto as **Exhibit "B."** The Liquidation Analysis is based upon a hypothetical liquidation in a chapter 7 case. In preparing the Liquidation Analysis, the Debtors have taken into account the nature, status and underlying value of its assets, the ultimate realizable value of its assets, and the extent to which such assets are subject to liens and security interests.

Debtors believe that the risk of non-payment of the Allowed Secured Claims and Allowed Priority and General Unsecured Claims of unsecured creditors in the Chapter 11 is greatly outweighed by the more substantial risk of non-payment should this Bankruptcy be converted to a Chapter 7 Liquidation, wherein the unsecured creditors and equity holders would receive no distribution and the assets of Debtors will be foreclosed out by secured lender Cirrus.

## VIII – CLAIMS AND THEIR TREATMENT UNDER THE PLAN

The Plan provides for payment in full of all Allowed Claims against each of the Debtors as follows:

<u>**Payment of Allowed Claims Against 340**</u>

9

***Administrative Claims:*** The administrative claimants include 340's attorneys and other professionals retained by order of the Bankruptcy Court and the Office of the U.S. Trustee. The Administrative Claim of the U.S Trustee will be paid on the date such payment is due and payable, and the Administrative Claim of 340's attorneys and other professionals will be paid on the Effective Date, unless otherwise ordered by the Bankruptcy Court. To the extent BH and 340 have joint and several liability for an Allowed Administrative Claim, the Claim shall be paid by 340.

***Allowed Tax Claims:*** All Allowed Tax Claims will be paid in full on the Effective Date, unless 340 elects to pay such Allowed Claim earlier or the Tax Claimant and 340 agree to different treatment.

**Class One (Cirrus):** The secured claim of Cirrus 340BB Lender LLC and Cirrus Real Estate Funding LLC ("Cirrus") shall be allowed in an amount as determined by the Court, pursuant to resolution of Adversary Proceeding No. 25-01110-LMI, and such Allowed Secured Claim shall be paid on the later of (a) the Effective Date and (b) a date that is no more than 10 days after entry of a Final Order allowing their claim. In the event that the Cirrus Claim has not been Allowed by Final Order as of the Effective Date, 340 will retain funds from the sale of the Property to pay the Class 1 Claim, if it is Allowed at a later date, in an amount to be determined by the Bankruptcy Court, to avoid delay in paying other Creditors on the Effective Date. Class 1 is unimpaired.

***Class Two (General Unsecured Creditors of 340):*** The General Unsecured claims of 340 include all Allowed claims of Unsecured Creditors that are not part of Class 1, subject to any Objections that are filed and sustained by the Court. The Unsecured Creditors shall be paid in full without interest on the Effective Date. Class 2 is unimpaired.

***Class Three (Equity):*** 340 shall retain any net sale proceeds after payment of all Class 1 and 2 Claims in full. 340 shall distribute any remaining proceeds after payment of all Allowed

Class 1 and 2 Claims in full pursuant to the terms of this Plan to its sole member BH. Class 3 is unimpaired.

### Payment of Allowed Claims Against BH

*Administrative Claims:* The administrative claimants include BH's attorneys and other professionals retained by order of the Bankruptcy Court and the Office of the U.S. Trustee. The Administrative Claim of the U.S Trustee will be paid on the date such payment is due and payable, and the Administrative Claim of BH's attorneys and other professionals will be paid on the Effective Date, unless otherwise ordered by the Bankruptcy Court. To the extent BH and 340 have joint and several liability for an Allowed Administrative Claim, the Claim shall be paid by 340.

*Allowed Tax Claims:* All Allowed Tax Claims will be paid in full on the Effective Date, unless BH elects to pay it sooner or the Tax Claimant and BH agree otherwise.

*Class Four (Cirrus):* The secured claim of Cirrus shall be allowed in an amount as determined by the Court, pursuant to resolution of Adversary Proceeding No. 25-01110-LMI, and such Allowed Secured Claim shall be paid on the later of (a) the Effective Date and (b) a date that is no more than 10 days after entry of a Final Order allowing their claim. BH believes that the Allowed Claim will be paid in full by 340. Class 4 is unimpaired.

*Class Five (General Unsecured Creditors of BH):* The General Unsecured claims of BH include all Allowed claims of Unsecured Creditors that are not part of Class 1, subject to any Objections that are filed and sustained by the Court. The Unsecured Creditors shall be paid in full without interest on the Effective Date. Class 5 is unimpaired.

*Class Six (Equity):* BH shall retain any net proceeds after payment of all Class 1 and 2 Claims in full. BH shall distribute any remaining proceeds after payment of all Allowed Class 1 and 2 Claims in full pursuant to the terms of this Plan to any equity holder. Class 6 is unimpaired.

## IX – POST-CONFIRMATION CONTROL OF DEBTOR

9.1     Debtors' Property shall be liquidated, and there shall be no further operations, other than the maintenance of the corporate structure and the payment of claims under the Plan.

## X – EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1     Any and all executory contracts and unexpired leases of the Debtors not expressly assumed within the Plan, not assumed prior to the Confirmation Date, or as of the Confirmation Date, or the subject of pending applications to assume, shall be deemed rejected.

10.2     Any claim for a rejected contract or lease shall be paid as a General Unsecured Claim by agreement, or upon determination by the Court, to the extent that such claims are allowed.

## XI – LIQUIDATION ANALYSIS

As with any Plan, an alternative would be a conversion of the Chapter 11 case to a Chapter 7 case, and subsequent liquidation of Debtors by a duly appointed or elected Trustee. In the event of a liquidation under Chapter 7, there would be an additional tier of administrative expenses entitled to priority over general Unsecured Claims under Section 507(a)(1) of the Bankruptcy Code would be incurred.  Such administrative expenses would include: Trustee's commissions and fees to the Trustee's accountant, attorney's fees and other professionals likely to be retained for the purposes of liquidating the assets of Debtors.  In addition, the Debtors believe that substantially less than market value will be realized for Debtors' property or the same would be foreclosed out by Cirrus, with nothing left for any distribution to any other creditors.

Debtors, with the assistance of their professionals, have prepared the Liquidation Analysis

12

attached hereto as **Exhibit "B."**  Debtors maintains that a sale of its assets pursuant to the Sale Order will provide significantly more for creditors than a Chapter 7 liquidation.

Predicated upon the foregoing and under a comparison of Chapter 11 reorganization versus Chapter 7 liquidation, Debtors believe that the Creditors will receive substantially more money under a Chapter 11 Plan than they would under a Chapter 7 proceeding.

The Court has previously set February 21, 2025 as the claims bar date.  All indebtedness scheduled by Debtors as not disputed, contingent or unliquidated or any indebtedness set forth in a properly executed and timely filed Proof of Claim shall be deemed an allowed claim unless the same is objected to.

## XII – CONFIRMATION REQUEST

12.1     Debtors reserve the right, in the event that impaired classes reject the Plan, or any amendments or modifications thereto, to seek confirmation of the Plan pursuant to 11 U.S.C. Section 1129(b), if the Court finds at a hearing on confirmation that the Plan does not discriminate unfairly and is fair and equitable with respect to each dissenting class.  Furthermore, in order for the Plan to be confirmed, of the ballots or votes cast, Creditors that hold at least 2/3 in amount and more than 1/2 in number of the allowed claims of impaired classes must accept the Plan.

12.2     Debtors submit that the Plan is fair and reasonable in its treatment of the respective classes of claims in this case, and that it is in the best interests of all affected parties to approve the Plan's treatment of the classes of claims.

**CREDITORS AND OTHER PARTIES IN INTEREST ARE URGED TO READ AND REVIEW THE FULL TEXT OF THE PLAN, AND ANY AMENDMENTS OR MODIFICATIONS THERETO, PRIOR TO VOTING ON WHETHER TO ACCEPT OR REJECT THE PLAN.**

13

## XIII – RISK ANALYSIS

13.1    As with any investment, there are risks associated with all plans and this matter is no exception.  Although the parties are all working together for a successful closing on the sale of the Property, the risk remains that an issue may arise that would delay the closing for some reason.  However, any such delay would be temporary until the issue is resolved to allow the closing to proceed.

## XIV – MISCELLANEOUS PROVISIONS

14.1    Notwithstanding any other provisions of the Plan, and any amendments or modifications thereto, any claim which is scheduled as disputed, contingent, or unliquidated, or which is objected in whole or in part on or before the date for distribution on account of such claim, shall not be paid in accordance with the provisions of the Plan until such claim has become an Allowed Claim by a final Order.  If allowed, the Claim shall be paid on the same terms as if there had been no dispute.

14.2    At any time before the Confirmation Date, Debtors may modify the Plan so long as the Plan as modified meets the requirements of Sections 1122, 1123 and 1127 of the Bankruptcy Code.  After Debtors file a modification with the Bankruptcy Court, the Plan, as modified, shall become the final Plan.

14.3    At any time after the confirmation date, and before substantial confirmation of the Plan, and any amendments or modifications thereto, Debtors or the Reorganized Debtors may modify the Plan so long as the Plan, as modified, meets the requirements of Sections 1122, 1123 and 1127 of the Bankruptcy Code.  The Plan, as modified under this paragraph, shall become the final Plan subject to and upon approval by the Court.

14

14.4     After the Confirmation Date, Debtors may amend the plan, with approval of the Bankruptcy Court, and so long as it does not materially and adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies in the final Plan or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of the final Plan.

14.5     Except as otherwise provided in the accompanying Plan, confirmation of the Plan shall be deemed to have discharged Debtors and their professionals, pursuant to Section 1141(d)(1) of the Code, from any claim included in this proceeding that arose on or prior to the Confirmation Date, and any claim of a kind specified in Section 502(g), (h) or (i) of the Bankruptcy Code whether or not: (i) a proof of the claim is filed or deemed to be filed under Sections 501 and 1111(a) of the Bankruptcy Code; (ii) such claim is allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of such claim has accepted the Plan.  The payments to be made pursuant to the Plan by Debtors shall be in full settlement and satisfaction of all claims against Debtors.

14.6     The tax provisions and exemptions of 11 U.S.C. Section 1146 shall apply to all transactions contemplated by the Plan and the relief sought shall be effective as of the closing date of the sale of the Property.

14.7     Debtors are current in the payment of all quarterly fees to the U.S. Trustee to date. Pursuant to 28 U.S.C. Section 1930(a)(6), Debtors shall pay to the U.S. Trustee's office all appropriate quarterly fees based upon post-petition disbursements until this case is closed by the entry of a final decree on the confirmed Plan.

## XV – CONCLUSION

15.1     Under Debtors' Plan, and any amendments or modifications thereto, all claimants of Debtors will participate in some manner in the distribution to be made thereunder. Debtors

believe that the distributions contemplated in its Plan are fair and afford all Claimants and interest holders equitable treatment. Accordingly, Debtors recommend that all claimants vote to accept the Plan.

*THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK*

This Disclosure Statement has been executed this 11th day of August 2025

**340 BISCAYNE OWNER LLC**

By: s/Cristiane Bomeny_____
Cristiane Bomeny
President, Winterland Property LLC
Manager of 340 Biscayne Owner LLC

**BH DOWNTOWN MIAMI, LLC**

By: s/Cristiane Bomeny_____
Cristiane Bomeny
President, Winterland Property LLC
Manager of BH Downtown Miami, LLC

**Pardo Jackson Gainsburg & Shelowitz, PL**
*Counsel for Debtors*
*BH Downtown Miami, LLC and 340 Biscayne Owner LLC*
100 Southeast 2nd Street, Suite 2050
Miami, Florida 33131
Telephone: (305) 358-1001
Facsimile: (305) 358-2001
Email: LJackson@pardojackson.com
       LLovell@pardojackson.com
       sramos@pardojackson.com

By: */s/ Linda Worton Jackson*_____
        Linda Worton Jackson
        Florida Bar No. 843164
        Linsey M. Lovell
        Florida Bar No. 121581

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

                                 Case No. 24-23028-LMI

BH DOWNTOWN MIAMI, LLC and
340 BISCAYNE OWNER LLC                Chapter 11

Debtors.                          (Jointly Administered)
_____ /

## JOINT PLAN OF REORGANIZATION OF
## 340 BISCAYNE OWNER LLC AND BH DOWNTOWN MIAMI, LLC

**Pardo Jackson Gainsburg & Shelowitz, PL**
*Counsel for Debtors*
100 Southeast 2nd Street, Suite 2050
Miami, Florida 33131
Telephone: (305) 358-1001
Facsimile: (305) 358-2001
Email: LJackson@pardojackson.com
       LLovell@pardojackson.com
       sramos@pardojackson.com

By: */s/ Linda Worton Jackson*
       Linda Worton Jackson
       Florida Bar No. 843164
       Linsey M. Lovell
       Florida Bar No. 121581

## <u>TABLE OF CONTENTS</u>

ARTICLE I – DEFINITIONS ..................................................................................................... 1

ARTICLE II – PROVISIONS FOR 340 ADMINISTRATIVE CLAIMS AND FEES ................. 5

ARTICLE III – CLASSIFICATION OF OTHER 340 CREDITORS' CLAIMS AND TREATMENT OF CLASSES OF CREDITORS AND CLAIMS UNDER THE PLAN ............. 5

ARTICLE IV – PROVISIONS FOR BH ADMINISTRATIVE CLAIMS AND FEES ............... 7

ARTICLE V – CLASSIFICATION OF OTHER BH CREDITORS' CLAIMS AND TREATMENT OF CLASSES OF CREDITORS AND CLAIMS UNDER THE PLAN ............. 8

ARTICLE VI – IMPAIRMENT ................................................................................................. 9

ARTICLE VII – EXECUTION OF THE PLAN .......................................................................... 9

ARTICLE VIII – POST-CONFIRMATION REORGANIZED DEBTORS'  STRUCTURE..... 10

ARTICLE IX – EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......................... 10

ARTICLE X – MODIFICATION OF THE PLAN ..................................................................... 10

ARTICLE XI – CONFIRMATION REQUEST ......................................................................... 11

ARTICLE XII – EFFECT OF CONFIRMATION ..................................................................... 11

ARTICLE XIII – RETENTION OF JURISDICTION ............................................................... 12

ARTICLE XIV – MISCELLANEOUS ..................................................................................... 13

340 BISCAYNE OWNER LLC and BH DOWNTOWN MIAMI LLC, Debtors-in-Possession, hereby propose the following Plan of Reorganization pursuant to Chapter 11 of the Bankruptcy Code.

## ARTICLE I – DEFINITIONS

For purposes of this Plan of Reorganization, and as may be amended, (the "Plan") and to the extent not otherwise provided herein, the terms below shall have the respective meanings hereinafter set forth and, unless otherwise indicated, the singular shall include the plural and any term in the Plan which is not defined below, but which is used in the Bankruptcy Code, shall have the meaning assigned to it in the Bankruptcy Code. The following terms and phrases when used in this Plan shall, unless the context otherwise requires, have the following meanings:

1.1     "340" means 340 Biscayne Owner LLC, debtor and debtor-in-possession in Case no. 24-23025-LMI.

1.2     "Administrative Claim" means a claim allowed under Section 503(b) of the Bankruptcy Code that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code.

1.3     "Allowed Claim" means (1) any claim listed in the Debtor's Schedules as filed in connection with its Bankruptcy and not scheduled as unliquidated, contingent or disputed, and/or (2) any claim against the Debtor, proof of which was timely filed on or before the bar date established by Order of the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c) for claims against each of the Debtor's estates, against which filed claim no objection to the allowance thereof has been interposed, or as to any such objection there has been a final order entered and/or (3) any claim against the Debtors which is reduced to writing and is consented to by the Debtors and liquidated in an amount, which writing has been approved by a final Order.

1

1.4    "Allowed Priority Claim" means that portion of an Allowed Claim entitled to priority under Section 507(a)(3), (4) (6) and (8) of the Bankruptcy Code.

1.5    "Allowed Secured Claim" means an Allowed Claim of a creditor secured by a "Lien," as that term is defined in Section 101(37) of the Bankruptcy Code against any "property" of the Debtor's estate, but only to the extent of the "value," as determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012 or as otherwise agreed to, of such creditors interest in such estate's interest in such property, but excluding claims under Section 506(b).   In accordance with the definition set forth in Section 506(a) of the Bankruptcy Code, an "Allowed Secured Claim" specifically excludes that portion of an Allowed Claim of a creditor having a Lien against any property of the Debtor's estate to the extent that the value of such creditor's interest is less than the amount of such allowed claim.   Only liens on property of the estate of the Debtor or on the proceeds thereof which are valid, perfected, and enforceable under applicable law and not subject to avoidance under the Bankruptcy Code or applicable non-Bankruptcy Law shall be an Allowed Secured Claim.

1.6    "Allowed Tax Claim" means any Allowed Claim of a taxing authority entitled to priority treatment under Section 507(a)(8) of the Bankruptcy Code.

1.7    "Allowed Unsecured Claim" means any Allowed Claim which is not an Administrative Claim, an Allowed Priority Claim, or an Allowed Secured Claim.

1.8    "BH" means BH Miami Downtown, LLC, debtor and debtor-in-possession in Case no. 24-23028-LMI.

1.9    "Chapter 11 Case" means the jointly administered Chapter 11 cases of the Debtors.

1.10    "Cirrus" means Cirrus 340BB Lender LLC and Cirrus Real Estate Funding LLC, collectively.

1.11    "Claimant" means the holder of a claim.

1.12    "Confirmation Date" means the date in which the Confirmation Order is entered on the Docket by the Bankruptcy Clerk.

1.13    "Confirmation Order" means a Final Order of the Bankruptcy Court confirming the provisions of the Plan of Reorganization, and any amendments or modifications thereto, pursuant to 11 U.S.C. Section 1129 of the Bankruptcy Code.

1.14    "Continuing Operations" means the ongoing business operation and such other businesses in which the reorganized Debtors may engage from time to time.

1.15    "Debtor(s)" means, individually or collectively as the context requires, 340 Biscayne Owner LLC and BH Downtown Miami, LLC.

1.16    "Disputed Claim" means any Claim designated as disputed, contingent or unliquidated in the Debtor's Schedules filed in connection with this Bankruptcy Case, or any Claim against which an objection to the allowance thereof has been, or will be, interposed, and as to which no Final Order has been entered.

1.17    "Effective Date" means the first date on which payments are made to Creditors holding Allowed Claims, which shall be no later than 90 days after entry of the Confirmation Order.

1.18    "Estate(s)" means, individually, the estate of each Debtor in the Chapter 11 Case and, collectively, the estates of both Debtors in the Chapter 11 Case, created pursuant to Section 541 of the Bankruptcy Code.

1.19    "Final Order" means an Order or Judgment entered by the Bankruptcy Court, or another Court of competent jurisdiction, in connection with the Debtor's reorganization case, which has not been reversed, stayed, modified, or amended and as to which the time to appeal or

3

to seek certiorari, review or rehearing has expired, as to which no petition for certiorari, review or rehearing is pending or as to which any right to appeal or to seek certiorari, review or rehearing has been waived in writing in a manner satisfactory to the Debtor.

1.20    "Plan" means this Plan of Reorganization, including any amendments or modifications thereto.

1.21    "Priority Claim" means a claim which qualifies for priority treatment under Section 507(a)(3), (4) or (6) of the Bankruptcy Code, other than Administrative Claims and Tax Claims.

1.22    "Pro Rata" means in the same proportion as each creditor's Allowed Claim bears to the total claims of the class; i.e., a creditor's pro rata distribution shall be a percentage of the total funds available for distribution which is equal to the amount of the creditor's claim, divided by the sum of (a) the total amount of all Allowed Claims and (b) the amount of all Disputed Claims.

1.23    "Property" means the real property located at 340 Biscayne Boulevard in Miami, Florida as well as the improvements located thereon which house a hotel, commonly known as Holiday Inn Port of Miami-Downtown.

1.24    "Record Date" means (a) for the purpose of voting on the Plan, the date of entry of an Order approving the Disclosure Statement with respect to the Plan, and, (b) for the purpose of any distribution to holders of an Allowed interest under the Plan, the Confirmation Date.

1.25    "Secured Creditor" means the holder of an Allowed Secured Claim.

1.26    "Tax Claim" means a claim filed by a Taxing Authority alleging priority status under Section 507(a)(8) of the Bankruptcy Code.

1.27    "Unsecured Creditor" means the holder of an Allowed Unsecured Claim, other than an Administrative Claim, Priority Claim, Secured Claim or Tax Claim.

## ARTICLE II – PROVISIONS FOR 340 ADMINISTRATIVE CLAIMS AND FEES

2.1   <u>Administrative Claims</u>

All allowed Administrative Claims against 340 of the type specified in 11 U.S.C. Section 507(a)(1) shall be paid (a) in full on the Effective Date of the Plan, or (b) if such claim is objected to, on the date of the Final Order allowing any such Administrative Claim, or (c) upon such other terms as may be agreed to between 340 and each such Administrative Claimant.  The administrative claimants include 340's attorneys, accountants and other professionals and the Office of the U.S. Trustee.  Payment of the administrative claims for 340's counsel and other professionals retained by order of the Bankruptcy Court is subject to set off for pre-petition retainers and prior payments, as well as approval by the Court of fee applications.  The scheduling Order for Confirmation will set forth a deadline for the filing of all administrative claims, which will be paid on or before confirmation, unless other payment arrangements are reached between 340 and the claimant.

2.2   All Fees due under Section 1129(a)(12) of the Bankruptcy Code shall be paid as required by 28 U.S.C. Section 1930, or as ordered by the Court at confirmation.

## ARTICLE III – CLASSIFICATION OF OTHER 340 CREDITORS' CLAIMS AND TREATMENT OF CLASSES OF CREDITORS AND CLAIMS UNDER THE PLAN

3.1   An Allowed Claim is part of a particular class only to the extent that the Allowed Claim qualifies within the definition of that class and, is in a different class to the extent that the remainder of the Claim qualifies within the description of a different class.

3.2   All payments under this Plan shall commence on the Effective Date of the Plan, unless indicated otherwise.

5

3.3     The remaining Creditors and Allowed Claims are divided into the following classes, which classes shall be mutually exclusive, and satisfied in full as follows:

*3.3.1 Administrative Claims:* The administrative claimants include 340's attorneys and other professionals retained by order of the Bankruptcy Court and the Office of the U.S. Trustee. The Administrative Claim of the U.S Trustee will be paid on the date such payment is due and payable, and the Administrative Claim of 340's attorneys and other professionals will be paid on the Effective Date, unless otherwise ordered by the Bankruptcy Court.  To the extent BH and 340 have joint and several liability for an Allowed Administrative Claim, the Claim shall be paid by 340.

*3.3.2 Allowed Tax Claims:* All Allowed Tax Claims will be paid in full on the Effective Date, unless 340 elects to pay such Allowed Claim earlier or the Tax Claimant and 340 agree to different treatment.

*3.3.3 Class One (Cirrus):* The secured claim of Cirrus 340BB Lender LLC and Cirrus Real Estate Funding LLC ("Cirrus")  shall be allowed in an amount as determined by the Court, pursuant to resolution of Adversary Proceeding No. 25-01110-LMI, and such Allowed Secured Claim shall be paid on the later of (a) the Effective Date and (b) a date that is no more than 10 days after entry of a Final Order allowing their claim. In the event that the Cirrus Claim has not been Allowed by Final Order as of the Effective Date, 340 will retain funds from the sale of the Property to pay the Class 1 Claim, if it is Allowed at a later date, in an amount to be determined by the Bankruptcy Court, to avoid delay in paying other Creditors on the Effective Date.  Class 1 is unimpaired.

*3.3.4 Class Two (General Unsecured Creditors of 340):* The General Unsecured claims of 340 include all Allowed claims of Unsecured Creditors that are not part of Class 1, subject to

any Objections that are filed and sustained by the Court. The Unsecured Creditors shall be paid in full without interest on the Effective Date. Class 2 is unimpaired.

***3.3.5 Class Three (Equity):*** 340 shall retain any net sale proceeds after payment of all Class 1 and 2 Claims in full. 340 shall distribute any remaining proceeds after payment of all Allowed Class 1 and 2 Claims in full pursuant to the terms of this Plan to its sole member BH. Class 3 is unimpaired.


### ARTICLE IV – PROVISIONS FOR BH ADMINISTRATIVE CLAIMS AND FEES

4.1    Administrative Claims

All allowed Administrative Claims against BH of the type specified in 11 U.S.C. Section 507(a)(1) shall be paid (a) in full on the Effective Date of the Plan, or (b) if such claim is objected to, on the date of the Final Order allowing any such Administrative Claim, or (c) upon such other terms as may be agreed to between BH and each such Administrative Claimant. The administrative claimants include the BH's attorneys, accountants and other professionals and the Office of the U.S. Trustee. Payment of the administrative claims for BH's counsel and other professional retained by order of the Bankruptcy Court is subject to set off for pre-petition retainers and prior payments, as well as approval by the Court of fee applications. The scheduling Order for Confirmation will set forth a deadline for the filing of all administrative claims, which will be paid on or before confirmation, unless other payment arrangements are reached between BH and the Claimant.

4.2    All Fees due under Section 1129(a)(12) of the Bankruptcy Code shall be paid as required by 28 U.S.C. Section 1930, or as ordered by the Court at confirmation.

**ARTICLE V – CLASSIFICATION OF OTHER BH CREDITORS' CLAIMS AND
TREATMENT OF CLASSES OF CREDITORS AND CLAIMS UNDER THE PLAN**

6.1     An Allowed Claim is part of a particular class only to the extent that the Allowed
Claim qualifies within the definition of that class and, is in a different class to the extent that the
remainder of the Claim qualifies within the description of a different class.

6.2     All payments under this Plan shall commence on the Effective Date of the Plan,
unless indicated otherwise.

6.3     The remaining Creditors and Allowed Claims are divided into the following
classes, which classes shall be mutually exclusive, and satisfied in full as follows:

*5.3.1 Administrative Claims:* The administrative claimants include BH's attorneys and
other professionals retained by order of the Bankruptcy Court and the Office of the U.S. Trustee.
The Administrative Claim of the U.S Trustee will be paid on the date such payment is due and
payable, and the Administrative Claim of BH's attorneys and other professionals will be paid on
the Effective Date, unless otherwise ordered by the Bankruptcy Court. To the extent BH and 340
have joint and several liability for an Allowed Administrative Claim, the Claim shall be paid by
340.

*5.3.2 Allowed Tax Claims:* All Allowed Tax Claims will be paid in full on the Effective
Date, unless BH elects to pay it sooner or the Tax Claimant and BH agree otherwise.

*5.3.3 Class Four (Cirrus):* The secured claim of Cirrus shall be allowed in an amount as
determined by the Court, pursuant to resolution of Adversary Proceeding No. 25-01110-LMI, and
such Allowed Secured Claim shall be paid on the later of (a) the Effective Date and (b) a date that
is no more than 10 days after entry of a Final Order allowing their claim. BH believes that the
Allowed Claim will be paid in full by 340. Class 4 is unimpaired.

*5.3.4 Class Five (General Unsecured Creditors of BH):* The General Unsecured claims of

8

BH include all Allowed claims of Unsecured Creditors that are not part of Class 1, subject to any Objections that are filed and sustained by the Court. The Unsecured Creditors shall be paid in full without interest on the Effective Date. Class 5 is unimpaired.

     *__5.3.5 Class Six (Equity):__*  BH shall retain any net proceeds after payment of all Class 1 and 2 Claims in full. BH shall distribute any remaining proceeds after payment of all Allowed Class 1 and 2 Claims in full pursuant to the terms of this Plan to any equity holder. Class 6 is unimpaired.

## ARTICLE VI – IMPAIRMENT

     According to the above terms of this Plan, no Classes are impaired. Impaired classes are entitled to vote for the Plan. In the event that the Debtors do not satisfy the requirements of Section 1129(a) of the Bankruptcy Code, the Debtors will seek confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code. Any ballot not filed in accordance with the filing instructions on the Ballot pertaining to this Plan shall not be counted for voting purposes.

## ARTICLE VII – EXECUTION OF THE PLAN

     8.1    The creditors will be paid from the sale of the Property, which will be sold by private sale or auction on or before the Effective Date. The sale will be free and clear of all liens, claims and encumbrances, pursuant to Section 363(f) of the Bankruptcy Code, with any liens, claims and encumbrances to attach to the proceeds of the sale. The Debtors submit that there will be sufficient net sales proceeds to make all distributions to Administrative and Tax Claimants and to Classes 1, 2, 3, 4, 5 and 6.

     8.2    Upon the entry of the Confirmation Order, the Debtors shall be vested with all the Debtor-in-Possession's rights, title and interests in the remaining assets of the Debtors free and clear, of all claims and interests of Creditors, except as otherwise provided herein.

9

8.3     The tax provisions and exemptions of 11 U.S.C., Section 1146 shall apply to any transfer(s) of the Property, and all transactions contemplated by this Plan, whether occurring prior to or subsequent to Confirmation, and any transfers of the Property shall be transferred pursuant to Section 1146.

8.4     After the entry of Order of Confirmation, the Reorganized Debtors will manage their financial and business affairs without further supervision of the Court.

8.5     The Disbursing Agent for the distributions under the Plan shall be the Debtors and/or the Reorganized Debtors.

## ARTICLE VIII – POST-CONFIRMATION REORGANIZED DEBTORS' STRUCTURE

9.1     On the Effective Date, Debtors' Property shall be liquidated and there shall be no further operations, other than the maintenance of the corporate structure and any further distributions.

## ARTICLE IX – EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1     Any and all executory contracts and unexpired leases of the Debtors not expressly assumed within the Plan, not assumed prior to the Confirmation Date, or as of the Confirmation Date, or the subject of pending applications to assume, shall be deemed rejected.

10.2     Any claim for a rejected contract or lease shall be paid as a General Unsecured Claim of 340 or BH, as appropriate, by agreement, or upon determination by the Court, to the extent that such claims are allowed.

## ARTICLE X – MODIFICATION OF THE PLAN

11.1     The Debtors may propose amendments to or modifications of this Plan, at any time

10

prior to confirmation upon notice to parties entitled to receive the same. After confirmation, the Debtors may, with approval of the Court, and so long as it does not materially adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies of the Plan, or in the Order of Confirmation, in such a manner as is necessary to carry out the purposes and effect of this Plan.

## ARTICLE XI – CONFIRMATION REQUEST

12.1    If all of the applicable provisions of 11 U.S.C. Section 1129(a), other than paragraph (8), are found to have been met with respect to the Plan, the Debtors seek confirmation pursuant to 11 U.S.C. Section 1129(a).  The Debtors reserve the right to seek confirmation of the Plan pursuant to the "cramdown" provisions of 11 U.S.C. Section 1129(b), if the Court finds at a hearing on confirmation that the Plan does not discriminate unfairly and is fair and equitable with respect to each dissenting class.  Furthermore, in order for the Plan to be confirmed, of the ballots or votes cast, Creditors that hold at least 2/3 in amount and more than 1/2 in number of the allowed claims of impaired classes must accept the Plan.

## ARTICLE XII – EFFECT OF CONFIRMATION

13.1    Discharge: Except as otherwise provided in this Plan, confirmation of the Plan shall be deemed to have discharged the Debtors, and their professionals, pursuant to Section 1141(d)(1) of the Code from any claim that arose on or prior to the Confirmation Date, and any claim of a kind specified in Section 502(g), (h) or (I) of the Bankruptcy Code whether or not: (i) a proof of the claim is filed or deemed to be filed under Sections 501 and 1111(a) of the Bankruptcy Code; (ii) such claim is allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of such claim has accepted the Plan.

13.2    The payments to be made pursuant to this Plan by the Debtors shall be in full settlement and satisfaction of all claims against the Debtors.

### ARTICLE XIII – RETENTION OF JURISDICTION

14.1    From and after entry of the Confirmation Order, the Bankruptcy Court shall retain such jurisdiction as is legally permissible over the reorganization case to insure that the purpose and intent of this Plan is carried out and for the following purposes: (a) to hear and determine any and all objections to the allowance of any claim; (b) to determine the classification of the claim of any creditor and the reexamination of any claims which have been allowed for the purposes of voting; (c) to approve the sale of the Property; (d) to hear and determine any and all applications for compensation for and reimbursement of expenses to professionals and enforce all Orders entered on such fee applications; (e) to hear and determine claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code; (f) to enable the Debtors to prosecute any and all proceedings which may be brought to set aside liens or encumbrances and to recover any transfers, property, or damages to which the Debtors may be entitled under applicable provisions of the Bankruptcy Code or any Federal, State or local laws; including causes of action, controversies, disputes and conflicts between either of the Debtors and any other party including but not limited to any causes of actions for objections to claims, preferences or fraudulent transfers and obligations or equitable subordination; (g) to enter any Order showing that good, sufficient and marketable legal title is conveyed to the purchaser of any of the Debtors' property; (h) to consider any necessary valuation issues under Section 506 of the Code, and any proceeding to determine the amount, validity and priority in connection with the Debtors' property; (i) to determine the rights of any party with respect to the assumption or rejection of any executory contracts or unexpired leases; (j) to correct any default, cure any omission or reconcile any inconsistency in the Plan or Order of Confirmation,

12

as may be necessary to carry out the purposes and intent of this Plan; (k) to modify this Plan after Confirmation, pursuant to applicable sections of the Code; (l) to enforce and interpret the terms and conditions of this Plan; (m) to enter Orders to enforce the title, rights and power of the estate as the Court may deem necessary; (n) to enter Order concluding and closing this case; and (o) to make such Order or give such directions as may be appropriate under Section 1142 of the Code.

## <u>ARTICLE XIV – MISCELLANEOUS</u>

15.1    <u>Headings</u>: Headings are utilized in this Plan for the convenience of reference only and shall not constitute a part of this Plan for any other purpose.

15.2    <u>Defects, Omissions and Amendments</u>: This Plan may be altered, amended or modified by the Debtors before or after the Confirmation Date as provided in Section 1127 of the Bankruptcy Code.

15.3    <u>Governing Law</u>: All rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the Laws of the State of Florida, and the Bankruptcy Code.

15.4    <u>Severability</u>: Should any provision of this Plan be determined to be unenforceable, such determination in no way limit or affect the enforceability and the operative effect of any or all other provisions of this Plan.

15.5    <u>Consistency</u>: Should any portion of this Plan or accompanying Disclosure Statement conflict with any portion of the Petition, Schedules, Statement of Financial Affairs, pleadings, or correspondence related to this matter, then the terms herein shall prevail and supersede all others.

15.6    <u>Quarterly Trustee Fees</u>: The Debtors are current in the payment of all quarterly fees to the U.S. Trustee to date. Pursuant to 28 U.S.C. Section 1930(a)(6), the Debtors shall pay to the

U.S. Trustee's office all appropriate quarterly fees based upon post-petition disbursements until this case is closed by the entry of a final decree on the confirmed Plan. Notwithstanding any other provisions of the Plan to the contrary, the Debtors shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. Section 1930(a)(6), within ten (10) days of the entry of the order confirming this Plan, for pre- confirmation periods and simultaneously provide to the United States Trustee an appropriate report indicating the cash disbursements for the relevant period. The Debtors, as Reorganized Debtors, shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. Section 1930(a)(6) for post confirmation periods within the time period set forth in 28 U.S.C. Section 1930(a)(6), based upon all post- confirmation disbursements made by the Reorganized Debtors, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code, and the Reorganized Debtors shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate report indicating all the cash disbursements for the relevant period.

*THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK*

This Plan of Reorganization has been executed this 11th day of August 2025.

**340 BISCAYNE OWNER LLC**

By: s/Cristiane Bomeny_____
Cristiane Bomeny
President, Winterland Property LLC
    Manager of 340 Biscayne Owner LLC

**BH DOWNTOWN MIAMI, LLC**

By: _s/Cristiane Bomeny_____
Cristiane Bomeny
President, Winterland Property LLC
    Manager of BH Downtown Miami, LLC

**Pardo Jackson Gainsburg & Shelowitz, PL**
*Counsel for Debtors*
*BH Downtown Miami, LLC and 340 Biscayne Owner LLC*
100 Southeast 2nd Street, Suite 2050
Miami, Florida 33131
Telephone: (305) 358-1001
Facsimile: (305) 358-2001
Email: LJackson@pardojackson.com
      LLovell@pardojackson.com
      sramos@pardojackson.com

By: */s/ Linda Worton Jackson*_____
    Linda Worton Jackson
    Florida Bar No. 843164
    Linsey M. Lovell
    Florida Bar No. 121581

# EXHIBIT
# B

## LIQUIDATION ANALYSIS

The Plan is a liquidating plan and provides for the sale of the Property to a qualified buyer. The Property is unique as it has an operating hotel situated on it, but the true value is in the development rights attached to it. Therefore, the highest and best offer will be from a buyer who is equipped to operate the Hotel in the short term, but has the financing and background to develop the Property and take advantage of the valuable entitlements that are part of the Property. Any buyer of this stature requires time for due diligence and financing in advance.

The Debtors have engaged with numerous qualified buyers and are well equipped to explain the Property, the Hotel operations and the potential development, having developed the Property and worked to achieve the entitlements and prepare the Property for development for approximately 10 years. Based on the sale offers to date, the Debtors anticipate that the creditors will be paid in full under the Plan.

In the event of a Chapter 7 liquidation, the hotel operations will stop, all of the executory contracts would be rejected, with substantial claims resulting and no source of payment. The sudden cessation of the hotel operations would result in substantial claims by guests, vendors, the management company, the licensor, travel agents and many others, plus the loss of income on the Property and the profits that result from that operation. The lost revenue would also serve to decrease the value of the Property, because any buyer would lose the source of income while they prepare the Property for development. In addition, a forced sale would result in buyers who lack the familiarity and resources to use the Property for its maximum potential resulting in substantially lower offers. And, the Debtors believe that in a forced liquidation, the Secured Creditor would likely foreclose on the Property or buy the Property for the amount of its debt, realize a windfall, and the other creditors would receive nothing. And, in either case, a trustee would be appointed for the Debtors, adding delay and expense to the estate. In a forced liquidation, the unsecured creditors and equity holder would likely receive nothing. Therefore, the Debtors believe the Plan is a better result for all creditors than a Chapter 7 liquidation.