UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

BH DOWNTOWN, LLC and
340 BISCAYNE OWNER LLC

Debtors.
_____/

Case No. 24-23028-LMI

Chapter 11

(Jointly Administered)

**OBJECTION TO DEBTORS' MOTION FOR PROTECTIVE ORDER
AND OBJECTION TO NOTICES OF RULE 2004 EXAMINATION DUCES TECUM**

Cirrus Real Estate Funding LLC and Cirrus 340BB Lender LLC (collectively, "**Cirrus**") submits this objection (the "**Objection**") to *Debtors' Motion for Protective Order and Objection to Notices of Rule 2004 Examination Duces Tecum* [ECF No. 158] (the "**Motion**").[1] In support of its Objection, Cirrus respectfully states as follows:

**OBJECTION**

1. Since the filing of these cases last year, the Court, Cirrus, and all other parties in interest have heard the same story from the Debtors: they will sell the Property at a price that will be sufficient to pay all creditors in full and permit a recovery to the Debtors' equity holders.[2] However, now on the eve of the plan confirmation process, the Debtors have not provided *any*

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

[2] "[T]he debtor is very busy negotiating with various brokers, various potential purchasers, various potential equity and lenders…" Hr'g Tr. 25:1 – 25:4 (Jan. 8, 2025); "Since the Petition Date the Debtors have been working diligently to achieve a sale or refinancing of the Property." *Debtors' Motion to Extend Exclusive Periods to File a Plan and Solicit Acceptances Thereof* [Dkt. No. 72] (March 18, 2025), ¶ 7; "We've gotten a number of different offers from prospective buyers, investors." Hr'g Tr. 40:5 – 40:6 (June 30, 2025); "the Debtors are continuing to negotiate with various buyers…" Motion, ¶ 7.

details as to how they plan to accomplish the sale, and the Debtors' vague representations do not provide any comfort that they will be able to do so.[3]

2. After eight months in chapter 11 (and two days before the final expiration of exclusivity), the Debtors filed a plan and accompanying disclosure statement that are so bereft of any substance that there is no reason why those documents could not have been filed on the first day of these cases. Instead of detailing what the Debtors have repeatedly trumpet as an intense and comprehensive marketing process, the Debtors simply state that "340 will sell the Property by private sale or auction." Disclosure Statement, p. 11. The only disclosure made by the Debtors to support their supposedly full payment plan is a stale $200 million appraisal of the Property from last summer. *Id.*

3. Given the Debtors' obvious failure to provide even the most basic details around a potential sale and the plan process, Cirrus filed the narrowly tailored Requests to better understand the Debtors' formulation of the Plan (a basis for examination explicit in Rule 2004) including whether a sale is feasible, and whether there is enough money to pay all claims – the basic information any debtor would be expected to provide to its sole secured creditor.

4. Rather than confer with Cirrus to address any issues with the Requests, the Debtors rushed to file the Motion – once again relying on the now-familiar refrain that Debtors lack the resources to timely comply with their disclosure obligations while misleadingly portraying Cirrus as unreasonable by omitting the full correspondence between counsel to Cirrus and the Debtors.

5. In fact, Cirrus offered to hold the Requests in abeyance if the Debtors agreed to provide any documents that outline the terms of a proposed sale (collectively, the "**Modified**

---

[3] For example, the Debtors provide no details on the number of potential buyers contacted, the number of potential buyers who have undertaken a due diligence process, the number of letters of intent that have been executed, the status of negotiations with potential buyers, or even the structure of a potential sale.

**Requests**"). To address any alleged chilling effect on the bidding process, Cirrus offered to permit the Debtors to redact information that would identify bidders and enter into a confidentiality agreement. Instead of responding and trying to resolve the issues, the Debtors simply filed the Motion without including Cirrus's offer of the Modified Requests.

6. Even after the Debtors filed the Motion, Cirrus continued to try and reach a compromise and limit the scope of the Requests, but the Debtors repeatedly refused. Instead, the Debtors insisted on a complete withdrawal of the Requests premised on an amended disclosure statement, without any assurances as to when the amendments will be filed, what will be included, or any further details around the sale process. Attached as **Exhibit A** is a copy of the complete email correspondence between counsel to Cirrus and the Debtors.[4]

7. The Debtors' blanket refusal to comply with the Requests not only heightens Cirrus's legitimate concerns regarding whether the Debtors have made any progress in these cases, but is contrary to law. "Generally, Rule 2004 examinations are very broad." *In re No Rust Rebar, Inc.*, 2022 WL 17365810, at *2 (Bankr. S.D. Fla. Dec. 1, 2022) (citing *In re Pan Am. Hosp. Corp.*, 2005 WL 2445907, at *2 (Bankr. S.D. Fla. Feb. 25, 2005)). In fact, "[n]umerous courts have acknowledged the rule's broad scope, holding that a Rule 2004 examination can be legitimately in the nature of a 'fishing expedition.'" *Id.* (quoting *In re Pan Am.*, 2005 WL 2445907, at *2). Courts grant a Rule 2004 examination upon establishing "good cause" which includes a showing "that denial of the Rule 2004 discovery would cause undue hardship or injustice." *In re Defoor Centre, LLC*, 634 B.R. 630, 638 (Bankr. M.D. Fla. 2021) (footnote omitted).

---

[4] In the Motion, the Debtors repeatedly refer to their representation to the Court that they intend to file an amended disclosure statement as a basis for denying the Requests. Not only does this improperly place the burden of identifying deficiencies in the Disclosure Statement on Cirrus, but ignores the fact that the Requests were filed prior to such representations. *See* Motion ¶¶ 6-7.

8. The information sought in the Requests go to the feasibility of the Plan (which purports to entirely disenfranchise Cirrus), and Cirrus would suffer undue hardship if the Debtors are permitted to continue to withhold critical information.[5]

9. Given the late stage of these cases, Cirrus is entitled to confirm – through the receipt of the discovery – that the Debtors have in fact complied with their duty to maximize the value of their estates for the benefit of creditors. The Debtors' refusal to provide even the information in the Modified Requests only increases doubts that they have spent their time productively while in bankruptcy protection. If the Debtors have failed to make adequate progress in selling the Property, they should not be permitted to solicit a plan that is premised on the hope of accomplishing a sale that will result in sufficient proceeds to allow a recovery to creditors. Further delay will only prejudice creditors if it turns out that the Debtors' sale process has been more aspirational than effective.

10. The Debtors assert that the Requests are "unduly burdensome, overly broad, being sought for an improper purpose, seek confidential information and privileged information, constitute harassment, and request information not relevant to confirmation of the Plan." Motion ¶ 11. The Court should see these protestations for what they are – conclusory and without any substantiation. As to burden, the Debtors have made no showing as to the approximate number of documents that would be responsive to the Requests or the alleged burden in producing such documents, nor have they disclosed the number of bidders they have contacted, how many have executed confidentiality agreements, and how many have provided draft transaction documents in order to demonstrate the extent to which the Requests are burdensome.

---

[5] The Requests can be summarized as falling into the following categories of requested information: (i) valuation, marketing, and sale of the Property, (ii) feasibility of the Plan, including the Debtors' ability to pay all creditors in full and provide a recovery to equity, and (iii) the liquidation analysis attached to the Disclosure Statement.

11.     Further, the Requests are plainly for a legitimate purpose. Rule 2004 explicitly states that proper areas for examination include "the source of any money . . . to be acquired by the debtor for purposes of consummating a plan . . . and any other matter relevant to the case or formulation of a plan." Fed. R. Bankr. P. 2004(b). Here, the Requests go to the heart of the formulation and basis for the Plan.

12.     Finally, the Debtors' assertion that Cirrus should have sought discovery under Rule 7030 is a red herring. As the Debtors acknowledge, Rule 7030 only applies to contested matters. *See* Motion ¶ 12 and Rule 9014(c).[6] As Cirrus has not yet filed an objection to the Disclosure Statement, there is no contested matter in which to receive the discovery sought in the Requests. Regardless, Rule 7030 would only briefly extend the Debtors' deadline to respond by two weeks, and not justify a blanket denial of the Requests.

WHEREFORE, as the Requests are reasonable and necessary to evaluate whether the Disclosure Statement contains adequate information and the feasibility of the Plan, Cirrus respectfully requests the Court deny the Motion in its entirety, require the Debtors to comply with the Requests, along with such other and further relief as this Court deems just and proper under the circumstances.

---

[6] "For example, the filing of an objection . . . to a disclosure statement creates a dispute which is a contested matter." Fed. R. Bankr. P. 9014 advisory committee's 1983 note; *see also In re Mouzen Enters., Inc.*, 610 F.3d 1329, 1333 (11th Cir. 2010) (quoting same).

Dated: September 8, 2025

                                      Respectfully submitted,

<u>s/ Daniel N. Gonzalez</u>
Daniel N. Gonzalez, Esq.
Florida Bar No. 0592749
dgonzalez@melandbudwick.com
**MELAND BUDWICK, P.A.**
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

-and-

**PRYOR CASHMAN LLP**
Todd E. Soloway, Esq. (admitted *pro hac vice*)
Bryan T. Mohler, Esq. (admitted *pro hac vice*)
Andrew S. Richmond, Esq. (admitted *pro hac vice*)
7 Times Square
New York, New York 10036
Telephone: (212) 421-4100
Facsimile: (212) 326-0806
Email: tsoloway@pryorcashman.com
       bmohler@pryorcashman.com
       arichmond@pryorcashman.com

*Counsel to Cirrus Real Estate Funding, LLC and Cirrus 340BB Lender LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 8, 2025, a true and correct copy of the foregoing was served to all parties receiving CM/ECF notification via the Court's CM/ECF system.

*s/ Daniel N. Gonzalez*
Daniel N. Gonzalez, Esquire
Florida Bar No. 592749
dgonzalez@melandbudwick.com
MELAND BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

# Richmond, Andrew S.

| | |
|---|---|
| **From:** | Richmond, Andrew S. |
| **Sent:** | Friday, September 5, 2025 1:47 PM |
| **To:** | Linda Jackson; Mohler, Bryan T. |
| **Cc:** | Linsey Lovell |
| **Subject:** | RE: 2004 Request |

Linda,

We are not sure why you are refusing to provide basic information regarding potential purchasers – the cornerstone of your plan. We have offered to agree to keep any such information confidential, obviating your concerns about harming the process. But your position raises serious questions about whether your client has, in fact, made concrete progress, or if the dearth of information in your disclosure statement (which we outlined below) is due to the lack of any real progress. Of course, all of this is critically relevant to whether we need to object to your disclosure statement.

The lack of any actual information is also the reason why we were forced to serve 2004 demands. As I noted below, we are willing to consider staying enforcement **of virtually all of our demands** – all we are asking for is proof of any progress towards a sale, such as term sheets or related communications with potential buyers, which you represented to the Court exist. While we are disturbed that you willfully failed to disclose this offer in your motion for a protective order, we are willing to confer with you as to why our narrow request – along with our offer to enter into a confidentiality agreement – are somehow problematic or harmful to the process, as you claim.

Please let us know your availability Monday morning.

Thank you,

Andrew

_____

**ANDREW S. RICHMOND**
Counsel
**PRYOR CASHMAN LLP**
7 Times Square, New York, NY 10036-6569
arichmond@pryorcashman.com

Tel: 212-326-0251
Fax: 212-326-0806

www.pryorcashman.com
*A member of Interlaw, an International Association of Independent Law Firms*

---

**From:** Linda Jackson <ljackson@pardojackson.com>
**Sent:** Friday, September 5, 2025 12:05 PM
**To:** Richmond, Andrew S. <ARichmond@pryorcashman.com>; Mohler, Bryan T. <BMohler@pryorcashman.com>
**Cc:** Linsey Lovell <llovell@pardojackson.com>
**Subject:** RE: 2004 Request

Andrew,

1

EXHIBIT A

I am not sure why you need agreements/offers submitted but not accepted or that are still being negotiated. It is more misleading than anything else if they are not finalized and signed and can only hurt the process. Once we agree on a purchase agreement, we will file a motion with the court to approve it and you will have a copy of the relevant agreement. Anything else is really irrelevant in evaluating the plan. Wouldn't you agree?

And, as far as the claims analysis, the plan provides that your claim is paid first, so how does having access to our assessment of general unsecured claims or contract rejection/assumption assist you in deciding whether to accept the plan?

If you believe the Disclosure Statement does not contain enough information, the proper way to address it is with proposed amendments to the disclosure statement, not to serve discovery. And, as I have told you multiple times, we are going to amend the Disclosure Statement, so I still don't understand why you need this information now. There is no urgency and it makes more sense to wait until we amend and see if you still believe you need the documents and depositions you requested.

Why don't you withdraw all four of the 2004 Requests and wait and see what, if anything, is necessary after we amend and the Court determines what information is appropriate at that time?

Please let me know, and as always, I am available to meet and confer on this issue.

**Linda Worton Jackson**
**Pardo Jackson Gainsburg & Shelowitz, PL**
100 S.E. Second Street, Suite 2050
Miami, Florida 33131
Phone: (305) 358-1001
Facsimile: (305) 358-2001
Direct: (305) 374-4804
E-Mail: ljackson@pardojackson.com
Website:  www.pardojackson.com





---

**From:** Richmond, Andrew S. <ARichmond@pryorcashman.com>
**Sent:** Thursday, September 4, 2025 4:30 PM
**To:** Linda Jackson <ljackson@pardojackson.com>; Mohler, Bryan T. <BMohler@pryorcashman.com>
**Cc:** Linsey Lovell <llovell@pardojackson.com>
**Subject:** RE: 2004 Request

2

| CAUTION: EXTERNAL |
|---|

Linda,

The disclosure statement does not disclose whether (or how many) bids have been received, at what prices, and on what timelines – there is no substantive information allowing us to evaluate your plan.

If there are currently multiple bidders, please provide us with documents evidencing any agreements, term sheets, or other such information that outlines the terms of a proposed deal. While we think we are well within our rights to demand all this information irrespective of supposed confidentiality concerns, as I said below, you can feel free to redact information identifying any potential bidder. This should be a very discrete universe of documents – a handful of PDFs at most – that you can easily hand over (and redact if necessary).  We would also be amenable to entering into a confidentiality agreement to keep the specifics of any bid confidential.

We are just trying to figure out if there is a real, viable plan or not. If you can give us this information, we are willing to agree to hold off on our other 2004 demands, and will consider whether we need to move forward with the deposition.

With respect to supplementing the disclosure statement, at a minimum, the disclosure statement lacks basic information regarding the valuation, sale, and marketing process for the property, progress made by the debtors towards a sale, any information regarding the claims pool, and a substantive liquidation analysis.  The lack of this basic information is what prompted our 2004 request.

Thank you,

Andrew

_____

**ANDREW S. RICHMOND**
Counsel
**PRYOR CASHMAN LLP**
7 Times Square, New York, NY 10036-6569
arichmond@pryorcashman.com

Tel:  212-326-0251
Fax: 212-326-0806

www.pryorcashman.com
*A member of Interlaw, an International Association of Independent Law Firms*

---

**From:** Linda Jackson <ljackson@pardojackson.com>
**Sent:** Thursday, September 4, 2025 3:01 PM
**To:** Richmond, Andrew S. <ARichmond@pryorcashman.com>; Mohler, Bryan T. <BMohler@pryorcashman.com>
**Cc:** Linsey Lovell <llovell@pardojackson.com>
**Subject:** RE: 2004 Request

Andrew,

I am just following up.
Have you made a decision about whether you are withdrawing the 2004 Request?
Are you available for a meet and confer today to discuss it?
We need to know whether we need to file something today, so please let me know how you want to proceed, so we don't spend time needlessly preparing a motion.

3

Thanks.

Linda Worton Jackson
Pardo Jackson Gainsburg & Shelowitz, PL
100 S.E. Second Street, Suite 2050
Miami, Florida 33131
Phone: (305) 358-1001
Facsimile: (305) 358-2001
Direct: (305) 374-4804
E-Mail: ljackson@pardojackson.com
Website:  www.pardojackson.com




-----Original Message-----
From: Linda Jackson
Sent: Thursday, September 4, 2025 12:57 PM
To: Richmond, Andrew S. <ARichmond@pryorcashman.com>; Mohler, Bryan T. <BMohler@pryorcashman.com>
Cc: Linsey Lovell <llovell@pardojackson.com>
Subject: RE: 2004 Request

Andrew,

If you believe you need additional information in the disclosure statement to consider the plan, please send me an email to let me know exactly what information you are looking for.
In our District, if a creditor believes the disclosure statement does not contain adequate information to decide whether to vote on the plan, we typically identify those issues in advance, so that the debtor can work to modify the disclosure statement in advance of the hearing and resolve any objections without the need for a formal objection or argument. We are generally very successful doing that and it saves the parties time and money and avoids unnecessary arguments in court. If you want to send me a list of the information that you would like to see in the disclosure statement, I believe we can work through any necessary modifications.

As you know, we are planning to amend the disclosure statement anyway, so I would be happy to address any changes you would like in advance of filing the amendment. In fact, I have told you that many times, and it would have made more sense to send any comments you have regarding the disclosure statement rather than serving a discovery request to try to gather the information yourself.

Also, the requests you sent are over the top and jeopardize the debtor's ability to continue to negotiate with buyers, creditors and parties to contracts.
Disclosing all of the offers, communication with buyers, etc. and all communication and documents related to the value of the property would certainly chill any further negotiations with buyers and any

4

auction prospects.

Disclosing all documents, analysis and communication relating to the decision to reject contracts would also jeopardize any decisions that might be made in the future and any negotiations with the parties to those contracts.

We would have the same issue disclosing all documents and communications and analysis regarding claims to be paid since we are still reviewing the claims for possible objections.

And, any and all documents and communication considered by the Debtors in formulating the Plan? This request is extremely broad and unnecessary.

I also don't see how having this extensive information and documentation is necessary to evaluate the Plan or needed prior to the Court's determination of whether the disclosure statement contains adequate information.

These are just a few examples and not meant to be exhaustive of the objections. We also have concerns about the other requests not specifically mentioned in this email, and issues related to things, such as confidentiality, the continuing obligation to produce as we move forward, timing of production, whether the Requests are subject to Rule 7030 rather than 2004, and the need for any of this discovery in light of the fact that you know and the Court knows that we plan to amend the documents. We have been very candid about the sale, and you are aware that we are continuing to negotiate with buyers.

In addition, you have served us with many discovery requests in the past few weeks, so please consider whether this one is truly necessary.

I am happy to have a meet and confer today to discuss it, but I suggest that you withdraw the 2004 Requests for production and the 2004 Notices of Deposition set for September 16, and instead send us an email identifying the information you would like to see in the amended disclosure statement. Let's see if we can address your concerns that way instead and avoid the need for us to file a motion for protective order.

If you would like to discuss this, I am available anytime today between now and 3 pm. After that we will need to file something with the Court. Please let me know what time you would like to meet and confer today, but please also consider my suggestion.

Linda

Linda Worton Jackson
Pardo Jackson Gainsburg & Shelowitz, PL
100 S.E. Second Street, Suite 2050
Miami, Florida 33131
Phone: (305) 358-1001
Facsimile: (305) 358-2001
Direct: (305) 374-4804
E-Mail: ljackson@pardojackson.com
Website:  www.pardojackson.com

-----Original Message-----
From: Richmond, Andrew S. <ARichmond@pryorcashman.com>
Sent: Thursday, September 4, 2025 11:21 AM
To: Linda Jackson <ljackson@pardojackson.com>; Mohler, Bryan T. <BMohler@pryorcashman.com>
Cc: Linsey Lovell <llovell@pardojackson.com>
Subject: RE: 2004 Request

CAUTION: EXTERNAL

Linda,

The topics addressed in our Rule 2004 requests are intended to aid Cirrus in understanding the debtors' proposed plan as the accompanying disclosure statement did not provide adequate information. For example, the debtors have had nearly nine months to make progress on a sale, yet there is no information in the disclosure statement as to any details of a potential transaction.

Irrespective of a plan amendment, these topics are proper areas for examination. Rule 2004 is explicit that the proper topics for examination include the source of any funding to consummate a plan and any other matter relevant to the case or to formulating a plan.

We are available to meet and confer on this matter in advance of tomorrow's production deadline. To the extent there are any confidentiality concerns, we can address appropriate redactions.

Thank you,

Andrew

_____
ANDREW S. RICHMOND
Counsel
PRYOR CASHMAN LLP
7 Times Square, New York, NY 10036-6569
arichmond@pryorcashman.com

Tel: 212-326-0251
Fax: 212-326-0806

www.pryorcashman.com
A member of Interlaw, an International Association of Independent Law Firms

-----Original Message-----
From: Linda Jackson <ljackson@pardojackson.com>
Sent: Wednesday, September 3, 2025 10:15 PM
To: Richmond, Andrew S. <ARichmond@pryorcashman.com>; Mohler, Bryan T. <BMohler@pryorcashman.com>

6

Cc: Linsey Lovell <llovell@pardojackson.com>
Subject: 2004 Request

Andrew,

In reviewing the Rule 2004 document request, I am wondering why you need any of these documents. I question all the requests, but for example, why would you need all communication related to efforts to market or refinance the property or to claims analysis? And why do you need any documents and communication related to rejection of contracts or drafts of marketing plans? I am trying to understand the purpose of this request and what it relates to. Please explain why you need any of these documents, and especially when we filed a liquidating plan and you know we are planning to amend the plan and disclosure statement.

Thanks
Sent by Linda

_____

***CONFIDENTIALITY NOTICE***
This email contains confidential information which may also be legally privileged and which is intended only for the use of the recipient(s) named above. If you are not the intended recipient, you are hereby notified that forwarding or copying of this email, or the taking of any action in reliance on its contents, may be strictly prohibited. If you have received this email in error, please notify us immediately by reply email and delete this message from your inbox.

***CONFIDENTIALITY NOTICE***
This email contains confidential information which may also be legally privileged and which is intended only for the use of the recipient(s) named above. If you are not the intended recipient, you are hereby notified that forwarding or copying of this email, or the taking of any action in reliance on its contents, may be strictly prohibited. If you have received this email in error, please notify us immediately by reply email and delete this message from your inbox.