UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

              Case No. 24-23028-LMI

BH DOWNTOWN MIAMI, LLC and
340 BISCAYNE OWNER LLC       Chapter 11

Debtors.           (Jointly Administered)
_____ /


**THIRD AMENDED JOINT PLAN OF REORGANIZATION OF
340 BISCAYNE OWNER LLC AND BH DOWNTOWN MIAMI, LLC**


**Pardo Jackson Gainsburg & Shelowitz, PL**
*Counsel for Debtors*
100 Southeast 2nd Street, Suite 2050
Miami, Florida 33131
Telephone: (305) 358-1001
Facsimile: (305) 358-2001
Email: LJackson@pardojackson.com
    LLovell@pardojackson.com
    sramos@pardojackson.com

By: */s/ Linda Worton Jackson*
   Linda Worton Jackson
   Florida Bar No. 843164
   Linsey M. Lovell
   Florida Bar No. 121581

## **TABLE OF CONTENTS**

ARTICLE I – DEFINITIONS ........................................................................ 1

ARTICLE II – PROVISIONS FOR GENERAL EXPENSE ADMINISTRATIVE CLAIMS AND FEES ...................................................................................................... 8

ARTICLE III – CLASSIFICATION OF OTHER CREDITORS' CLAIMS AND TREATMENT OF CLASSES OF CREDITORS AND CLAIMS UNDER THE PLAN ..................................... 11

ARTICLE IV – IMPAIRMENT ..................................................................... 14

ARTICLE V – EXECUTION OF THE PLAN ...................................................... 14

ARTICLE VI – EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......................... 16

ARTICLE VIII - PROSECUTION AND RESOLUTION OF LITIGATION CLAIMS ............. 18

ARTICLE IX - EFFECTUATING DOCUMENTS AND FURTHER TRANSACTIONS ........ 18

ARTICLE X - EXEMPTION FROM CERTAIN TAXES AND FEES ...................................... 19

ARTICLE XI - PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN .......... 20

ARTICLE XII – CONFIRMATION REQUEST ...................................................... 21

ARTICLE XIII – EFFECT OF CONFIRMATION ...................................................... 22

ARTICLE XIV – RETENTION OF JURISDICTION ................................................... 22

ARTICLE XV – MISCELLANEOUS ................................................................ 23

340 BISCAYNE OWNER LLC and BH DOWNTOWN MIAMI LLC, Debtors-in-Possession, hereby propose the following Third Amended Plan of Reorganization pursuant to Chapter 11 of the Bankruptcy Code.

## <u>ARTICLE I – DEFINITIONS</u>

For purposes of this Plan of Reorganization, and as may be amended, and to the extent not otherwise provided herein, the terms below shall have the respective meanings hereinafter set forth and, unless otherwise indicated, the singular shall include the plural and any term in the Plan which is not defined below, but which is used in the Bankruptcy Code, shall have the meaning assigned to it in the Bankruptcy Code. The following terms and phrases when used in this Plan shall, unless the context otherwise requires, have the following meanings:

1.1     "340" means 340 Biscayne Owner LLC, debtor and debtor-in-possession in Case no. 24-23025-LMI.

1.2     "Administrative Claim" means a claim allowed under Section 503(b) of the Bankruptcy Code that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code.

1.3     "Administrative Claim Bar Date" means the deadline for Holders of Administrative Claims accruing for the period from the Petition Date through the Effective Date to file a request with the Bankruptcy Court for payment of such Administrative Claim.

1.4     "Allowed Claim" means (1) any claim listed in the Debtor's Schedules as filed in connection with its Bankruptcy and not scheduled as unliquidated, contingent or disputed, and/or (2) any claim against the Debtor, proof of which was timely filed on or before the bar date established by Order of the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c) for claims against each of the Debtor's estates, against which filed claim no objection to the allowance thereof has been interposed, or as to any such objection there has been a Final Order entered and/or (3) any claim against the Debtor which is reduced to writing and is consented to by the Debtor and

1

liquidated in an amount, which writing has been approved by a Final Order.

1.5    "Allowed Priority Claim" means that portion of an Allowed Claim entitled to priority under Section 507(a)(3), (4) (6) and (8) of the Bankruptcy Code.

1.6    "Allowed Secured Claim" means an Allowed Claim of a creditor secured by a "Lien," as that term is defined in Section 101(37) of the Bankruptcy Code against any "property" of the Debtor's estate, but only to the extent of the "value," as determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012 or as otherwise agreed to, of such creditor's interest in such estate's interest in such property, but including claims under Section 506(b), except as provided in Section 3.3.1.  In accordance with the definition set forth in Section 506(a) of the Bankruptcy Code, an "Allowed Secured Claim" specifically excludes that portion of an Allowed Claim of a creditor having a Lien against any property of the Debtor's estate to the extent that the value of such creditor's interest is less than the amount of such Allowed Claim.  Only Liens on property of the estate of the Debtor or on the proceeds thereof which are valid, perfected, and enforceable under applicable law and not subject to avoidance under the Bankruptcy Code or applicable non-Bankruptcy Law shall be an Allowed Secured Claim.

1.7    "Allowed Tax Claim" means any Allowed Claim of a taxing authority entitled to priority treatment under Section 507(a)(8) of the Bankruptcy Code.

1.8    "Allowed Unsecured Claim" means any Allowed Claim that is a General Unsecured Claim.

1.9    "Assets" means all tangible and intangible assets of every kind and nature of the Debtors within the meaning of section 541 of the Bankruptcy Code.

1.10    "Avoidance Actions" means all rights to avoid transfers or distributions and recover any such avoided transfers or distributions for the benefit of the Estates under chapter 5

of the Bankruptcy Code or otherwise, including, but not limited to, Bankruptcy Code sections 502(d), 510, 541, 542, 544, 545, 547, 548, 549, 550, 551, and 553, or otherwise under the Bankruptcy Code or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance claims, rights, and causes of action, whether or not demand has been made or litigation has been commenced as of the Effective Date.

1.11   "Auction Sale" means a sale of the Property through an auction to be conducted by an auctioneer pursuant to an order of the Court granting authority for an auction of the Property.

1.12   "Ballot" means the form or forms distributed for voting on the Plan.

1.13   "BH" means BH Miami Downtown, LLC, debtor and debtor-in-possession in Case no. 24-23028-LMI.

1.14   "Cash" means legal tender of the United States of America and equivalents thereof.

1.15   "Causes of Action" means all claims, actions (including the Avoidance Actions), causes of action, choses in action, suits, refunds, turnovers, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims of any of the Debtors and/or any of the Estates against any Person, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, and any and all commercial tort claims against any Person, arising from or relating to any act or omission or other event occurring at any time prior to (and including) the Effective Date; and subject, however, to any releases provided in the Plan, the Confirmation Order, or any other Final Order of the Bankruptcy Court.

3

1.16    "Claims Objection Deadline" means the date set by the Bankruptcy Court by which the Debtors must object to Claims.

1.17    "Chapter 11 Case" means the jointly administered Chapter 11 cases of the Debtors.

1.18    "Cirrus" means Cirrus 340BB Lender LLC and Cirrus Real Estate Funding LLC, collectively.

1.19    "Cirrus Escrow Fund" means funds to be held by Debtors' counsel or other escrow agent acceptable to the Debtors and Cirrus after the closing on the Property in an amount to be determined by the Court by separate motion to secure payment of Cirrus' Class 1 Claim, if Allowed.  Cirrus' Lien on the Property will attach to the Cirrus Escrow Fund pursuant to Section 363 of the Bankruptcy Code.

1.20    "Cirrus Litigation" means Adversary Proceeding No. 25-01110-LMI pending in the Bankruptcy Court.

1.21    "Claimant" or "Holder" means the holder of a claim or Equity Interest.

1.22    "Confirmation Date" means the date in which the Confirmation Order is entered on the Docket by the Bankruptcy Clerk.

1.23    "Confirmation Order" means a Final Order of the Bankruptcy Court confirming the provisions of the Plan of Reorganization, and any amendments or modifications thereto, pursuant to 11 U.S.C. Section 1129 of the Bankruptcy Code.

1.24    "Debtor(s)" means, individually or collectively as the context requires, 340 Biscayne Owner LLC and BH Downtown Miami, LLC.

1.25    "Deficiency Claim" means the difference between a Claimant's Allowed Secured Claim and the value of Debtor's interest in the collateral securing the Claimant's Allowed Secured Claim.

1.26    "Disputed" means with respect to any Claim filed with the Bankruptcy Court by a Creditor a Claim that is objected to in whole or in part, which objection has not been withdrawn or resolved.

1.27    "Distribution(s)" means Cash distributed to Holders of Allowed Claims, or their designated agents, as applicable, under the Plan.

1.28    "Distribution Date(s)" means the date(s) on which the Distributions are made.

1.29    "Effective Date" means a date to be selected by the Debtors, which shall be no later than 75 days after entry of the Confirmation Order.

1.30    "Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

1.31    "Equity Interest" means any and all issued, unissued, authorized or outstanding shares of stock or limited company interests in any Debtor.

1.32    "Estate(s)" means, individually, the estate of each Debtor in the Chapter 11 Case and, collectively, the estates of both Debtors in the Chapter 11 Case, created pursuant to Section 541 of the Bankruptcy Code.

1.33    "Final Order" means an Order or Judgment entered by the Bankruptcy Court, or another Court of competent jurisdiction, in connection with the Debtors' reorganization case, which has not been reversed, stayed, modified, or amended and as to which the time to appeal or to seek certiorari, review or rehearing has expired, as to which no petition for certiorari, review or rehearing is pending or as to which any right to appeal or to seek certiorari, review or rehearing has been waived in writing in a manner satisfactory to the Debtor.

1.34    "General Administrative Claim" means any Administrative Claim or any Professional Fee Claim.

1.35    "General Unsecured Claim" means any Claim against the Debtors that is deemed

5

or determined by the Bankruptcy Code or Bankruptcy Court, as the case may be, to have arisen before the Petition Date and that is not: (i) a Secured Claim, (ii) an Administrative Claim, (iii) a Professional Fee Claim, (iv) a Statutory Fee Claim, (v) a Priority Tax Claim, (vi) a Priority Claim or any other Claim entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court, or (vii) any Claim that constitutes an Interest.

1.36    "General Unsecured Creditor" means the Holder of an General Unsecured Claim.

1.37    "Hotel" means the hotel known as the "Holiday Inn" located on the Property.

1.38    "Hotel Operations" means the business of operating the Hotel; provided, however, that any sale of the Hotel shall not include the transfer of the License Agreement or any rights thereunder.

1.39    "Initial Distribution Date" means the date on which 340 makes the first Distribution to General Unsecured Creditors on account of their Allowed Claims.

1.40    "Lien" means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge, right of first refusal or surrender right, or other encumbrance of any kind, including any "lien" as defined in section 101(37) of the Bankruptcy Code.

1.41    "Litigation Claims" means any and all claims and Causes of Action of either Debtor and/or either of the Estates against any Person, including but not limited to, the Cirrus Litigation.

1.42    "Litigation Proceeds" means the net proceeds of the Litigation Claims.

1.43    "Net Sale Proceeds" means the proceeds of the Sale of the Property by Auction Sale or Private Sale, after payment of any and all closing costs, including without limitation, any brokers fees, auctioneer fees, taxes, recording fees, closing fees, Professional Fees and other costs associated with the closing.

1.44    "Order" means an order, opinion, or judgment of the Bankruptcy Court as entered on the docket.

1.45    "Person" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, a governmental unit or any agency or subdivision thereof or any other entity.

1.46    "Petition Date" means December 13, 2024, the date on which the Debtors commenced the Chapter 11 Cases.

1.47    "Plan" means this Third Amended Plan of Reorganization, including any amendments or modifications thereto and any attachments.

1.48    "Priority Claim" means a claim which qualifies for priority treatment under Section 507(a) of the Bankruptcy Code, other than General Administrative Claims, Priority Tax Claims, or U.S. Trustee Fees.

1.49    "Priority Tax Claim" means a Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.50    "Private Sale" means the sale of the Property to a private buyer pursuant to an agreement between the Debtors and the buyer that is not the result of an auction of the Property.

1.51    "Privilege" means the attorney-client privilege, work product protections or other immunities (including without limitation those related to common interests or joint defenses with other parties), or protections from disclosure of any kind held by the Debtors or their Estates.

1.52    "Professional" means any professional Person employed by either or both of the Debtors in the Chapter 11 Cases under section 327, 363, or 1103 of the Bankruptcy Code or otherwise under an Order of the Bankruptcy Court.

1.53    "Professional Fee Escrow" means an account to be funded from the Debtors' Cash

7

on hand on or prior to the Confirmation Hearing in an amount equal to the aggregate amount of Allowed unpaid fees for all Professionals through the Plan Effective Date, including any estimated amounts.

1.54    "Pro Rata" means in the same proportion as each creditor's Allowed Claim bears to the total claims of the class; i.e., a creditor's pro rata distribution shall be a percentage of the total funds available for distribution which is equal to the amount of the creditor's claim, divided by the sum of (a) the total amount of all Allowed Claims and (b) the amount of all Disputed Claims.

1.55    "Professional Fees" means all fees and costs approved by the Court under Section 330(a), 331 or 503 of the Bankruptcy Code.

1.56    "Property" means the real property located at 340 Biscayne Boulevard in Miami, Florida as well as the improvements located thereon which house a hotel, commonly known as Holiday Inn Port of Miami-Downtown, and all fixtures and inventory located thereon.

1.57    "Record Date" means (a) for the purpose of voting on the Plan, the date of entry of an Order approving the Disclosure Statement with respect to the Plan, and, (b) for the purpose of any Distribution to Holders of an Allowed Equity Interest under the Plan, the Confirmation Date.

1.58    "Sale" means the sale of the Property, whether by Private Sale or Auction Sale.

1.59    "Sale Proceeds" means the proceeds of the Sale of the Property by Auction Sale or Private Sale.

1.60    "Secured Creditor" means the holder of an Allowed Secured Claim.

1.61    "Statutory Fees" means any and all fees payable to the U.S. Trustee under section 1930 of title 28 of the United States Code and any interest thereupon.

## <u>ARTICLE II – PROVISIONS FOR GENERAL EXPENSE ADMINISTRATIVE CLAIMS AND FEES</u>

2.1    <u>Administrative Claims</u>

All Allowed  Administrative Claims against the Debtors of the type specified in 11 U.S.C. Section 507(a)(1) (other than Professional Fees) shall be paid on the later of (i)(a) the Effective Date of the Plan, or (b) if such claim is objected to, on the date of the Final Order allowing any such Administrative Claim, (c) upon the date the claim is due and payable, (d) upon such other terms as may be agreed to between the Debtors and each such Administrative Claimant, or (ii) a date specified by the Court by separate order.  The scheduling Order for Confirmation will set forth a deadline for the filing of all Administrative Claims.  All post-petition ordinary course operating costs and expenses related to the Hotel Operations, and any business-related indebtedness or obligation incurred or assumed by the Debtors during these cases and is not a Disputed Claim, shall be paid in the ordinary course of business when due.  Any Disputed Administrative Claims will be paid upon entry of an Order allowing the Claim or as otherwise ordered by the Court. To the extent the Debtors have joint and several liability for an Allowed General Administrative Claim, the Claim shall be paid by 340.

2.2    <u>Professional Fees</u>.

Allowed Professional Fee Claims shall be paid in full upon entry of an Order of the Bankruptcy Court allowing such Professional Fee (or such other treatment less favorable than the treatment provided herein as may be agreed upon by a Holder of any such Allowed Professional Fee Claim and the Debtors).

The deadline for submission by **<u>all</u>** Professionals for Bankruptcy Court approval of Professional Fee Claims will be set by order of the Court.  Any Professional or other Person or Entity that is required to file and serve a request for approval of a Professional Fee Claim that fails to file and serve a timely request will be forever barred, estopped, and enjoined from asserting

9

any request for payment of a Professional Fee Claim or participating in Distributions under the Plan on account thereof. All Professionals employed by the Debtors shall provide to the Debtors an estimate of their professional fees and expenses from the Confirmation Hearing through the Effective Date, which will be set aside by the Debtors in the Professional Fee Escrow. The Professional Fee Escrow shall be funded on or before the Confirmation Hearing if possible or as soon thereafter as practical. After the Confirmation Hearing the Debtors shall pay the Professionals in the ordinary course from the Professional Fee Escrow and Cash without further order of the Bankruptcy Court and shall disclose all payments in the Monthly Operating Reports and Final Report.

     2.3   <u>Priority Tax Claims</u>.

Each Holder of an Allowed Priority Tax Claim, shall receive in full satisfaction of such Allowed Priority Tax Claim, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, payment in Cash equal to the Allowed amount of such Priority Tax Claim, on the later of (i) the Effective Date and (ii) the date such Priority Tax Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court, or such other treatment as may be agreed upon by any such Holder of a Priority Tax Claim and the Debtors. The Debtors reserve the right to prepay such Allowed Priority Tax Claim at any time. Upon payment of the Priority Tax Claim, any Liens securing any Allowed Priority Tax Claim shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person.

     2.4   <u>Priority Claims</u>.

All Allowed Priority Claims other than Priority Tax Claims will be paid in full on the later of the Effective Date, and the date the Priority Claim is Allowed by Final Order of the Bankruptcy

Court.

2.5    Statutory Fees.

All Fees due under Section 1129(a)(12) of the Bankruptcy Code shall be paid as required by 28 U.S.C. Section 1930, or as ordered by the Court at Confirmation.

### ARTICLE III – CLASSIFICATION OF OTHER CREDITORS' CLAIMS AND TREATMENT OF CLASSES OF CREDITORS AND CLAIMS UNDER THE PLAN

An Allowed Claim is part of a particular class only to the extent that the Allowed Claim qualifies within the definition of that class and, is in a different class to the extent that the remainder of the Claim qualifies within the description of a different class. The Cash and the proceeds of the Sale and Litigation Claims may or may not be sufficient to pay all Chapter 11 Allowed Claims in full. If the proceeds of the Cash and proceeds of the Sale Litigation Claims are sufficient to pay all Allowed Chapter 11 debt in full, all Allowed Chapter 11 debt will be paid in full. Conversely, if the Sale proceeds are not sufficient to pay all Allowed Chapter 11 debt in full, sequential Distributions will be made after the Initial Distribution Date in order of legal priority of those Claims, as described below.

3.1    All payments under this Plan shall commence on the Effective Date of the Plan, unless indicated otherwise.

3.2    The remaining Creditors and Allowed Claims are divided into the following classes, which classes shall be mutually exclusive, and satisfied in full as follows:

**_3.3.1 Class One (Allowed Secured Claims of Cirrus against 340):_** The Bankruptcy Court shall determine whether Cirrus has an Allowed Secured Claim against 340 and the amount of any such Claim in the Cirrus Litigation. Any Allowed Secured Claim shall be paid in full from the Net Sale Proceeds on the later of (a) the Effective Date and (b) a date that is no more than 10 days after entry of a Final Order allowing their Secured Claim. In the event that Cirrus' Secured Claim has

not been Allowed by Final Order as of the date of the closing on the Sale of the Property, 340 will

retain a portion of the Net Sale Proceeds in the Cirrus Escrow Fund and will pay the Class 1 Claim

from the Cirrus Escrow Fund within ten (10) days of entry of a Final Order Allowing the Secured

Claim. Nothing in this Section 3.3.1 is intended to modify any rights of Cirrus under Section

506(b) of the Bankruptcy Code or the Loan Documents, subject to any ruling by the Bankruptcy

Court in the Cirrus Litigation. Any Deficiency Claim of Cirrus shall be treated as a Class 3 Claim.

Class 1 is unimpaired.

**3.3.2 Class Two (Allowed Secured Claim of the City of Miami against 340)**: The City

of Miami shall have an Allowed Secured Claim in the amount of $2000.19, plus additional charges

that may accrue. The City of Miami will either receive a Distribution under the Plan on account

of its Allowed Secured Claim, or it will maintain its Allowed Secured Claim and the Lien on the

Property after the Effective Date and after closing on any sale of the Property. Class 2 is

unimpaired.

***3.3.3 Class Three (Allowed General Unsecured Claims Against 340):*** The Class 3 General

Unsecured Claims against 340 include all Allowed Claims of General Unsecured Creditors that

are not General Administrative Claims, Claims entitled to Priority, or Class 1 Claims.    The

Unsecured Creditors shall be paid on account of their Allowed Claims on the Initial Distribution

Date on a Pro Rata basis after setting aside funds sufficient to pay anticipated General

Administrative Claims, and payment in full of the Allowed General Administrative Claims,

Priority Claims, Priority Tax Claims, and Class 1 and 2 Claims are paid in full or funds are

escrowed for the Class 1 Claim. In the event that 340 receives payment from the Cirrus Litigation

or any other Litigation Proceeds, or Cash from any other source, 340 will make a second

Distribution to Class 3 Creditors who did not receive payment in full on the Initial Distribution

Date, and will make the second Distribution on a Pro Rata basis after setting aside funds sufficient to pay anticipated General Administrative Claims. In the event 340 has sufficient Cash to pay the Class 3 Creditors in full, it will make additional Distributions until they are paid in full,  In the event that there are sufficient funds to pay the Class 3 Claims in full with interest, the General Unsecured Creditors will be paid interest on their Allowed Claims at the federal post judgment interest  rate of  3.61% with such interest accruing from the Petition Date until paid in full.  Class 3 is impaired.

*3.3.4 Class Four (Equity of 340):* 340 shall retain any property in the estate after payment of all Class 1, 2 and 3 Claims in full.  340 shall distribute any remaining property, including any Litigation Claims, after payment of all Allowed Class 1, 2 and 3 Claims in full pursuant to the terms of this Plan to its sole member BH. Class 4 is impaired.

*3.3.5 Class Five (Cirrus' Allowed Secured Claim against BH):* The only Secured Claim asserted against BH is the Claim filed by Cirrus.  The Secured Claim asserted by Cirrus shall be allowed in an amount determined by the Bankruptcy Court in the Cirrus Litigation, and such Allowed Secured Claim shall be paid from the Cash received by BH on account of its Class 4 Claim on the later of (a) ten (10) days after payment to BH on account of its Class 4 Claim and (b) a date that is no more than 10 days after entry of a Final Order allowing their claim. Any Deficiency Claim will be paid as a Class 6 Claim.  BH believes that any Allowed Secured Claim will be paid in full by 340. Class 5 is unimpaired.

*3.3.6 Class Six (Allowed General Unsecured Claims Against BH):* The General Unsecured claims of BH include all Allowed claims of General Unsecured Creditors that are not part of Class 1, 2, 3, 4 or 5, and any Deficiency Claim of Cirrus.  The Class 6 General Unsecured Creditors shall be paid on a Pro Rata basis from any Cash  BH receives on account of its Class 4

Claim on the later of (a) ten (10) days after payment to BH on account of its Class 4 Claim and (b) a date that is no more than 10 days after entry of a Final Order allowing their claim. Class 6 is impaired.

     ***3.3.7 Class Seven (Equity):*** BH shall retain any net proceeds and any other property of 340 after payment of all Class 1, 2, 3, 4, 5 and 6 Claims in full, and shall distribute any remaining proceeds and Assets to its Equity Interest Holders.  Class 7 is impaired.

## ARTICLE IV – IMPAIRMENT

     According to the above terms of this Plan, Classes 3, 4, 6 and 7 are impaired. Impaired classes are entitled to vote for the Plan.  In the event that the Debtors do not satisfy the requirements of Section 1129(a) of the Bankruptcy Code, the Debtors will seek confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code. Any Ballot not filed in accordance with the filing instructions on the Ballot pertaining to this Plan shall not be counted for voting purposes.

## ARTICLE V – EXECUTION OF THE PLAN

     5.1    The creditors and Equity Interest Holders will be paid from the Debtors' Cash on hand and the liquidation of the Debtors' Assets, including the Litigation Proceeds and Sale of the Property, which will be sold by Private Sale or Auction on or before the Effective Date free and clear of all liens, claims and encumbrances, pursuant to Section 363(f) of the Bankruptcy Code, with any liens, claims and encumbrances to attach to the proceeds of the sale.

     5.2    On or before October 10, 2025, the Debtors will file a separate motion seeking approval of the Sale of the Property pursuant to Section 363 of the Bankruptcy Code and seeking authority to conduct an auction of the Property with a professional auctioneer, with the auction to occur on or before December 19, 2025.  In the event that the Debtors execute a purchase agreement

14

with a private buyer prior to the scheduled auction, which the Debtors believe in their business judgment is higher and better than the offer they would realize in an auction, the Debtors will seek authority from the Bankruptcy Court to cancel the auction and close with the buyer in a Private Sale.  In either case, the Debtors will seek Bankruptcy Court approval under Section 363 of the Bankruptcy Code with such motion to address any credit bid Cirrus may have.

5.3     In the event that that the buyer includes the Hotel Operations in the purchase, the Hotel Operations will be sold with the Property.  The Debtors will continue the Hotel Operations until the closing on the Sale, and the buyer will continue Hotel Operations after the closing, unless the buyer elects a different plan for the Property, or the Bankruptcy Court orders otherwise.

5.4     Upon the entry of the Confirmation Order, the Debtors shall be vested with all the Debtor-in-Possession's rights, title and interests in the remaining Assets of the Debtors free and clear of all claims and interests of Creditors, except as otherwise provided herein.

5.5     After the entry of the Confirmation Order, the Reorganized Debtors will manage their financial and business affairs without further supervision of the Court.

5.6     The Disbursing Agent for the distributions under the Plan shall be the Debtors and/or the Reorganized Debtors.

5.7     The Plan shall be deemed substantially consummated upon the Effective Date.

5.8     No provision of this Plan or the acceptance of any Distributions hereunder shall compromise, settle or release any Claims or Causes of Action belonging to the Debtors.

5.9     It is anticipated that the Sale of the Property and the Cash will be sufficient to pay all Secured, General Administrative, Priority and Statutory claims as well as either payment in full or a substantial distribution to General Unsecured Claims.  In the unlikely event that the Cash and Sale do not provide sufficient funds to pay the Creditors in full, the Debtors believe that the

15

Litigation Proceeds from the Cirrus Litigation will enable the Debtors to pay the Creditors with Allowed Claims in full.

5.10    Pursuant to the Plan the Debtors' Property shall be liquidated and there shall be no further operations, other than the maintenance of the corporate structure and any further distributions.

5.11    Winterland Property, LLC is the current Manager of the Debtors and will continue to manage the Debtors, the Sale, the Cirrus Litigation, the Plan and the Distribution and all aspects of the Chapter 11 and Plan consummation until all Distributions have been made.  The Manager will continue to serve without any compensation.

## ARTICLE VI – EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1    Any and all executory contracts and unexpired leases of the Debtors not expressly assumed within the Plan, not assumed prior to the Confirmation Date, or as of the Confirmation Date, or the subject of pending motions to assume, shall be deemed rejected. Notwithstanding the foregoing, the Holiday Inn® Hotel Change of Ownership License Agreement dated May 31, 2016 [Loc. #8740] (as same may have been amended) by and between Holiday Hospitality Franchising, LLC ("HHF"), as licensor, and 340, as licensee, shall be assumed or rejected by separate motion filed by 340, which shall be adjudicated at or prior to the Confirmation Hearing.

6.2    Any claim for a rejected contract or lease shall be paid as a General Unsecured Claim of 340 or BH, as appropriate, by agreement, or upon determination by the Court, to the extent that such claims are allowed.

6.3    **If the rejection by the Debtors, under the Plan or otherwise, of an Executory Contract gives rise to a Claim for rejection damages in accordance with section 502(g) of the Bankruptcy Code (the "Rejection Damages Claim"), a proof of Claim must be filed with the**

16

Bankruptcy Court at the following address, 301 North Miami Avenue, Room 150, Miami, FL 33128 by no later than thirty (30) days after the Plan Confirmation Date or such prior date as is ordered by the Court in connection with the sale process. Any proofs of Claim with respect to a Rejection Damages Claim not filed within such time shall be forever barred from assertion against the Debtors, the Estates and their property and such Persons holding such Claims will not receive and will be barred from receiving any Distributions on account of such untimely Rejection Damages Claim, absent further order of the Bankruptcy Court. All Rejection Damages Claims will be treated as General Unsecured Claims under the Plan and, to the extent they are deemed Allowed General Unsecured Claims, will receive the treatment afforded Allowed General Unsecured Claims.

## ARTICLE VII – MODIFICATION OF THE PLAN

The Debtors may propose amendments to or modifications of this Plan, at any time prior to confirmation upon notice to parties entitled to receive the same. After confirmation, the Debtors may, with approval of the Court, and so long as it does not materially adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies of the Plan, or in the Confirmation Order, in such a manner as is necessary to carry out the purposes and effect of this Plan. If any article, section, terms and/or subdivision of this Plan is ruled by the Bankruptcy Court to be improper or ineffective, or, if the Debtors decide unilaterally to remove any provision, section, subsection, and/or term  of this Plan at the Confirmation Hearing or otherwise, this Plan shall proceed to confirmation and be confirmed without the, section(s), subsection(s), term(s), and/or provision(s) found to be improper or ineffective and/or unilaterally removed by the Debtors at the Confirmation Hearing.

The Debtors reserve the right to modify the treatment of any Allowed Claim or Equity

17

Interest in any manner adverse only to the Holder of such Claim or Equity Interest at any time after the Effective Date upon the consent of the Holder of the Claim or Equity Interest whose Allowed Claim or Equity Interest, as the case be, is being adversely affected.

## ARTICLE VIII - PROSECUTION AND RESOLUTION OF LITIGATION CLAIMS

From and after the Effective Date, the Debtors shall have exclusive rights, powers, and interests of the Estates, to pursue, settle, or abandon such Litigation Claims as the sole representatives of the Estates under section 1123(b)(3) of the Bankruptcy Code, subject to notice to the creditors and an opportunity to be heard. Any and all Litigation Claims that are not expressly released or waived under the Plan are reserved and preserved and revest in the Debtors. No Person may rely on the absence of a specific reference in the Plan to any Litigation Claim against it as any indication that the Debtors will not investigate or pursue any and all available Litigation Claims against such Person. The Debtors expressly reserve all Litigation Claims, except for Litigation Claims against any Person that are expressly released or waived under the Plan, or have otherwise been released under any agreement or Final Order, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Litigation Claims upon, after, or as a consequence of Confirmation or substantial consummation of the Plan.

## ARTICLE IX - EFFECTUATING DOCUMENTS AND FURTHER TRANSACTIONS

Upon entry of the Confirmation Order, the Debtors shall be authorized and required to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, notices, resolutions, programs, and other agreements, instruments, and/or documents, and take such acts and actions as may be reasonably necessary or appropriate to effectuate, implement, substantially consummate, and/or further evidence the terms and conditions of the Plan and any transactions

18

described in or contemplated by the Plan. The Debtors, as applicable, may, and all Holders of Allowed Claims receiving Distributions under the Plan, at the request or direction of the Debtors, as applicable, shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions  and intent of the Plan.

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under the Plan that would otherwise require approval of the members, managers, or other owners, direct or indirect, of the debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the effective date (as applicable) under applicable law, without any further vote, consent, approval, authorization, or other action by such members, managers, or other owners of the Debtors or notice to, order of, or hearing before, the bankruptcy court. the Debtors are authorized to execute, deliver, file, or record such contracts, instruments, releases,and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## <u>ARTICLE X - EXEMPTION FROM CERTAIN TAXES AND FEES</u>

Under section 1146(a) of the Bankruptcy Code, the making or delivery of any instrument or transfer from a Debtor, or to any other Person under the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the forgoing instruments or other documents without the payment of any such tax or governmental assessment.  The Sale of the Property shall be a transfer under the Plan and

therefore exempt.

## ARTICLE XI - PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN

### 11.1    **Distribution Record Date; Transferability**

After reserving sufficient funds for anticipated US Trustee fees and Professional Fees, the Debtors will make distributions on the Effective Date and any additional Distribution Dates until all funds are distributed.

### 11.2    **Method of Payment**

Unless otherwise expressly agreed, in writing, all Cash payments to be made under the Plan shall be made by check drawn on  a domestic bank or an electronic wire transfer.

### 11.3    **Claims Objection Deadline**

The Debtors, and any other party in interest to the extent permitted under section 502(a) of the Bankruptcy Code, shall file and serve any objection to any Claim no later than the Claims Objection Deadline; provided, however, the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon motion and notice by the Debtors. The filing of such a motion shall automatically extend  the Claims Objection Deadline until entry of an order on account of such motion.

### 11.4    **No Distribution Pending Allowance**

Notwithstanding any other provision of the Plan, no Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by the Plan.

### 11.5    **Reserve of Cash Distributions**

On any date that Distributions are to be made under the terms of the Plan, unless the Bankruptcy Court orders otherwise, the Debtors shall reserve Cash or property equal to 100% of

the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto and funds necessary to pay anticipated General Administrative and US Trustee fees. Such Cash or property shall be held in trust for the benefit of the Holders of all such Disputed Claims, pending determination of their entitlement thereto, except the Claims asserted by Cirrus which shall be determined by separate motion.

### 11.6    **Distribution After Allowance**

Within the later of (i) ten (10) days after such Claim becomes an Allowed Claim and (ii) a Distribution Date, Debtors shall distribute, to the extent available, all distributable Cash or other property reserving only such funds as are reasonably necessary for General Administrative and costs and US Trustee fees.

### 11.7    **Delivery of Distributions**

Except as provided herein, Distributions to Holders of Allowed Claims shall be made: (i) at the addresses set forth on the respective proofs of Claim last filed by such Holders; (ii) at the addresses set forth in any written notices of address changes delivered to the Debtors after the date of any related proof of Claim; or (iii) at the address reflected in the Schedules if no proof of Claim is filed and the Debtors have not received a written notice of a change of address.

### 11.8    **Postpetition Interest**

Interest shall not accrue on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date, except as provided in the Plan. No prepetition Claim shall be Allowed to the extent it is for post-petition interest or other similar charges.

## ARTICLE XII – CONFIRMATION REQUEST

12.1    If all of the applicable provisions of 11 U.S.C. Section 1129(a), other than

paragraph (8), are found to have been met with respect to the Plan, the Debtors seek confirmation pursuant to 11 U.S.C. Section 1129(a). The Debtors reserve the right to seek confirmation of the Plan pursuant to the "cramdown" provisions of 11 U.S.C. Section 1129(b), if the Court finds at a hearing on confirmation that the Plan does not discriminate unfairly and is fair and equitable with respect to each dissenting class. Furthermore, in order for the Plan to be confirmed, of the ballots or votes cast, Creditors that hold at least 2/3 in amount and more than 1/2 in number of the allowed claims of impaired classes must accept the Plan.

## ARTICLE XIII – EFFECT OF CONFIRMATION

Except as otherwise provided in this Plan, confirmation of the Plan shall be deemed to have discharged the Debtors, and their professionals, pursuant to Section 1141(d)(1) of the Code from any claim that arose on or prior to the Confirmation Date (limited to between the Petition Date and the Effective Date for professionals), and any claim of a kind specified in Section 502(g), (h) or (I) of the Bankruptcy Code whether or not: (i) a proof of the claim is filed or deemed to be filed under Sections 501 and 1111(a) of the Bankruptcy Code; (ii) such claim is allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of such claim has accepted the Plan. All Privileges of the Debtors shall be maintained exclusively by the Debtors.

13.1    The payments to be made pursuant to this Plan by the Debtors shall be in full settlement and satisfaction of all claims against the Debtors.

## ARTICLE XIV – RETENTION OF JURISDICTION

14.1.    From and after entry of the Confirmation Order, the Bankruptcy Court shall retain such jurisdiction as is legally permissible over the reorganization case to insure that the purpose and intent of this Plan is carried out and for the following purposes: (a) to hear and determine any and all objections to the allowance of any claim; (b) to determine the classification of the claim of

any creditor and the reexamination of any claims which have been allowed for the purposes of voting; (c) to approve the Sale of the Property; (d) to hear and determine any and all applications for compensation for and reimbursement of expenses to professionals and enforce all Orders entered on such fee applications; (e) to hear and determine claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code; (f) to enable the Debtors to prosecute any and all proceedings which may be brought to set aside liens or encumbrances and to recover any transfers, property, or damages to which the Debtors may be entitled under applicable provisions of the Bankruptcy Code or any Federal, State or local laws; including causes of action, controversies, disputes and conflicts between either of the Debtors and any other party including but not limited to any causes of actions for objections to claims, preferences or fraudulent transfers and obligations or equitable subordination; (g) to enter any Order showing that good, sufficient and marketable legal title is conveyed to the purchaser of any of the Debtors' property; (h) to consider any necessary valuation issues under Section 506 of the Code, and any proceeding to determine the amount, validity and priority in connection with the Debtors' property; (i) to determine the rights of any party with respect to the assumption or rejection of any executory contracts or unexpired leases; (j) to correct any default, cure any omission or reconcile any inconsistency in the Plan or Order of Confirmation, as may be necessary to carry out the purposes and intent of this Plan; (k) to modify this Plan after Confirmation, pursuant to applicable sections of the Code; (l) to enforce and interpret the terms and conditions of this Plan; (m) to enter Orders to enforce the title, rights and power of the estate as the Court may deem necessary; (n) to enter Order concluding and closing this case; and (o) to make such Order or give such directions as may be appropriate under Section 1142 of the Code.

## **ARTICLE XV – MISCELLANEOUS**

15.1    <u>Headings</u>: Headings are utilized in this Plan for the convenience of reference only

and shall not constitute a part of this Plan for any other purpose.

15.2    <u>Defects, Omissions and Amendments</u>: This Plan may be altered, amended or modified by the Debtors before or after the Confirmation Date as provided in Section 1127 of the Bankruptcy Code.

15.3    <u>Governing Law</u>: All rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the Laws of the State of Florida, and the Bankruptcy Code.

15.4    <u>Severability</u>: Should any provision of this Plan be determined to be unenforceable, such determination in no way limit or affect the enforceability and the operative effect of any or all other provisions of this Plan.

15.5    <u>Consistency</u>: Should any portion of this Plan or accompanying Disclosure Statement conflict with any portion of the Petition, Schedules, Statement of Financial Affairs, pleadings, or correspondence related to this matter, then the terms herein shall prevail and supersede all others.

15.6    <u>Quarterly Trustee Fees</u>: The Debtors are current in the payment of all quarterly fees to the U.S. Trustee to date. Pursuant to 28 U.S.C. Section 1930(a)(6), the Debtors shall pay to the U.S. Trustee's office all appropriate quarterly fees based upon post-petition disbursements until this case is closed by the entry of a final decree on the confirmed Plan.  Notwithstanding any other provisions of the Plan to the contrary, the Debtors shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. Section 1930(a)(6), within ten (10) days of the entry of the order confirming this Plan, for pre- confirmation periods and simultaneously provide to the United States Trustee an appropriate report indicating the cash disbursements for the relevant period. The Debtors, as Reorganized Debtors, shall further pay the United States Trustee the

24

appropriate sum required pursuant to 28 U.S.C. Section 1930(a)(6) for post confirmation periods within the time period set forth in 28 U.S.C. Section 1930(a)(6), based upon all post- confirmation disbursements made by the Reorganized Debtors, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code, and the Reorganized Debtors shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate report indicating all the cash disbursements for the relevant period.

15.7    Interpretation; Application of Definitions and Rules of Construction: Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter. Unless otherwise specified, all section, article, schedule, or exhibit references in this Plan are to the respective section in, article of, Schedule to, or Exhibit to this Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause  contained in this Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan

15.8    Revocation or Withdrawal of the Plan: The Plan Proponents reserve the right to revoke or withdraw the Plan before the Plan Confirmation Date. If the Plan Proponents revoke or withdraw the Plan before the Plan Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtors or to prejudice in any manner the rights of the Debtors or any other parties in any further proceedings involving the Debtors.

15.9    <u>No Admissions</u>: Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by any Entity with respect to any matter set forth herein.

15.10    <u>Binding Effect</u>:  The Plan shall be binding upon and inure to the benefit of the Debtors, the Holders of Claims, the Holders of Interests, and all parties-in-interest and their respective successors and assigns.

*THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK*

This Plan of Reorganization has been executed this 3rd day of October, 2025.

### 340 BISCAYNE OWNER LLC

By: *s/Cristiane Bomeny*_____
Cristiane Bomeny
President, Winterland Property LLC
Manager of 340 Biscayne Owner LLC

### BH DOWNTOWN MIAMI, LLC

By: *s/Cristiane Bomeny*_____
Cristiane Bomeny
President, Winterland Property LLC
Manager of BH Downtown Miami, LLC

**Pardo Jackson Gainsburg & Shelowitz, PL**
*Counsel for Debtors*
*BH Downtown Miami, LLC and 340 Biscayne Owner LLC*
100 Southeast 2nd Street, Suite 2050
Miami, Florida 33131
Telephone: (305) 358-1001
Facsimile: (305) 358-2001
Email: LJackson@pardojackson.com
        LLovell@pardojackson.com
        sramos@pardojackson.com

By: */s/  Linda Worton Jackson*_____
        Linda Worton Jackson
        Florida Bar No. 843164
        Linsey M. Lovell
        Florida Bar No. 121581