

**ORDERED in the Southern District of Florida on November 7, 2025.**

**Laurel M. Isicoff, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

BH DOWNTOWN MIAMI, LLC and
340 BISCAYNE OWNER LLC

Debtors.
_____/

Case No. 24-23028-LMI

Chapter 11

(Jointly Administered)

**ORDER GRANTING DEBTOR'S MOTION TO APPROVE (A) SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(F) AND 105, (B) AUCTION PROCEDURES, (C) CLOSING OF HOTEL OPERATIONS, (D) APPROVING FORM OF PURCHASE AND SALE AGREEMENT; (E) SCHEDULING DATES TO CONDUCT AUCTION AND HEARING TO CONSIDER FINAL APPROVAL OF <u>SALE AND (F) FOR RELATED RELIEF</u>**

**THIS CAUSE** came before the Court on October 20, 2025 at 9:30 AM (the "Hearing") upon 340 Biscayne Owner, LLC's (the "Debtor") *Motion To Approve (A) Sale Of Assets Free And Clear Of All Liens, Claims And Encumbrances Pursuant to 11 U.S.C. §§ 363(F) and 105, (B)*

*Auction Procedures, (C) Closing Of Hotel Operations, (D) Approving Form Of Purchase And Sale Agreement; (E) Scheduling Dates To Conduct Auction And Hearing To Consider Final Approval Of Sale and (F) For Related Relief* (the "Motion") [ECF 197], and the *Objection* (the "Cirrus Objection") *to the Motion* filed by 340BB Lender, LLC and Cirrus Real Estate Funding LLC ('Cirrus") [ECF 207], the Objection filed by Holiday Hospitality Franchising, LLC ("HHF") [ECF 208], and the Limited Objection and Notice of Reservation of Rights filed by Hilco Real Estate, LLC ("Hilco") [ECF 206]. The Court having reviewed the Motion and the Objections, finding due notice has been provided of the Motion and Hearing, and having considered the evidence and arguments presented, hereby ORDERS as follows:

1. The Motion is **GRANTED** as set forth herein.

Sale of Property and Bid Procedures

2. The Debtor is authorized to sell the Property[1] and all of the Assets located at 340 Biscayne Boulevard, Miami, Florida pursuant to an auction free and clear of all liens, claims, encumbrances and interests, other than permitted exceptions, with any such liens, claims or encumbrances to attach to the net proceeds of the Sale, and pay closing or other costs from the sale proceeds at closing as may be required, subject to further hearing on the sale (the "Sale"), pursuant to Sections 363 (b) and (f) and 105 of the Bankruptcy Code.

3. The Sale Procedures (including the Bidder Terms and Purchase and Sale Agreement annexed thereto as Appendix A and B), the Registration Form and the Synopsis are all approved in substantially the form provided at Docket Entry 228.

4. To the extent any of the documents identified in paragraph 3 conflict with this Order, this Order shall control.

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

5. The Registration Fee of $250,000 is hereby approved

6. The Buyer's Premium provided in the Order Approving Auctioneer [ECF 217] has been approved.

7. The Debtor is authorized to sell the Property and Assets by an auction (the "Auction") pursuant to the terms of the Sale Procedures, subject to further Court approval of the Purchase and Sale Agreement between the Debtor and the Winning Bidder and any Backup Bidder at the Auction.

8. The Auction will open on December 3, 2025 and will end with a live Auction on December 17, 2025 in New York City. The Winning Bid and any Back Up Bid will be announced at the conclusion of the Auction.

9. The Debtor will have the live Auction transcribed.

Closing of Hotel Operations

10. The Debtor is authorized to take all steps necessary to close the Hotel Operations upon receipt of a signed Purchase and Sale Agreement and non-refundable deposit from (1) the Winning Bidder at the Auction or (2) a private buyer (to the extent permitted by the terms of the Auction Agreement), and to complete the closing of the Hotel Operations prior to a closing on the sale of the Property. Notwithstanding anything in this paragraph, the Debtor must operate the Hotel in accordance with the License Agreement (as defined below) until the Termination Date (as defined below).

11. The Holiday Inn® Hotel Change of Ownership License Agreement dated May 31, 2016 [Loc. #8740] (as same may have been amended, the "License Agreement") by and between HHF as licensor, and 340 Biscayne Owner LLC, as licensee, shall, automatically terminate as of 12:01 a.m. on January 5, 2026, without the requirement of any further action on the part of HHF

or the Debtor to effect such termination (the "Termination Date"), unless extended in writing by HHF and the Debtor prior to the Termination Date. The License Agreement, or any rights thereunder, will not be transferred to the Buyer through the Sale. In the event that the Buyer wishes to operate under a HHF flag after closing, the Buyer will need to apply for a new license agreement with HHF, which may or may not be approved in HHF's sole and absolute discretion.  The Buyer may obtain a new license application by contacting Kevin Winkowski, Director, Transactions & Asset Management, (678) 477-3508, kevin.winkowski@ihg.com.

12. HHF is authorized and has relief from the automatic stay to take any and all actions necessary to remove the Debtor from the System (as that term is defined in the License Agreement) upon the expiration of and in accordance with the License Agreement. The Debtor will work with HHF regarding the orderly shutdown of the reservation system.

13. Nothing in this Order shall waive, impair, or restrict the Debtor or HHF's rights under the License Agreement.

14. Notwithstanding any provisions of the Purchase and Sale Agreement, Sale Confirmation Order, or this Order, none of the System, Data, or Marks, as the terms are defined in the License Agreement, or other property or information of HHF, including intellectual property, subject to the License Agreement, shall be included in the Sale.

15. Debtor shall comply with Paragraph 12.D of the License Agreement to de-identify the Hotel. HHF is authorized to enter upon the premises of the Hotel as set forth in Paragraph 12.D of the License Agreement, to verify that the Hotel has been de-identified.

16. The Debtor shall remain obligated to and shall continue to pay all post-petition franchise fees due and owing to HHF in the ordinary course as they become due pursuant to the terms of the License Agreement. As fees and other amounts under the License Agreement are

generally billed in arrears, some amounts which accrue under the License Agreement on or before the Termination Date will nonetheless be invoiced after the Termination Date. Debtor acknowledges and agrees that it must still pay all post-petition fees which accrue under the License Agreement through and including the Termination Date, including those which become due and owing after the Termination Date as a result of fees being billed in arrears under the License Agreement. HHF need not file an application for payment of any administrative claim, and any amounts due under the License Agreement shall be paid in the ordinary course.

Credit Bid

17. Cirrus shall have a credit bid in the amount of One Hundred and One Million Five Hundred Thousand Dollars ($101,500,000.00) (the "Credit Bid Amount") and shall be entitled to credit bid up to the Credit Bid Amount at the Auction pursuant to Section 363(k) of the Bankruptcy Code and the Sale Procedures, subject to the terms of this Order.

18. In the event Cirrus is the Winning Bidder and its Winning Bid exceeds the Credit Bid Amount, at closing Cirrus will pay the difference between the Credit Bid Amount and its Winning Bid in cash (the "Positive Credit Bid Delta"), along with a flat fee to Concierge of $750,000 in lieu of the Buyer's Premium, subject to the provisions of the Sale Procedures.

19. In the event Cirrus is the Winning Bidder at the Auction and their allowed claim is later determined by the Court in Adversary Proceeding Case No. 25-01110-LMI (the "Adversary Proceeding") to be less than the amount Cirrus credit bids at the Auction, Cirrus shall be liable to the Debtor for the difference between the amount Cirrus credit bids and the allowed amount of its claim (the "Negative Credit Bid Delta").

20. In the event that Cirrus is the Winning Bidder at the Auction and executes the Purchase and Sale Agreement, at closing (a) Cirrus will take title to the Property, and (b) Cirrus

will deliver an executed Memorandum of Interest ("MOI") in a form reasonably satisfactory to the Debtors and Cirrus. The MOI shall be recorded at closing immediately following the recording of the deed, and shall include the following terms: (i) any judgment or order entered by the Bankruptcy Court in favor of the Debtors in the Adversary Proceeding will be recorded against the Property and will relate back to the date of recording of the MOI, and (ii) Cirrus shall be prohibited from transferring the Property or encumbering the Property until entry of a judgment or order by the Bankruptcy Court adjudicating the Adversary Proceeding and payment of any amount adjudged by the Bankruptcy Court to be due to the Debtors as a result of the Adversary Proceeding. In the event the MOI is recorded and either (x) the Bankruptcy Court adjudges there is no Negative Credit Bid Delta or judgment in favor of the Debtors in the Adversary Proceeding, or (y) any such Negative Credit Bid Delta or judgment is paid in full, the MOI shall be released and of no further force and effect.

21. In the event Cirrus is the Winning Bidder at the Auction and their allowed claim is later determined by the Court to be more than the amount Cirrus credit bid at the Auction, the Debtor shall refund to Cirrus the portion of the Positive Credit Bid Delta, if any, representing the difference between the credit bid and the allowed claim amount.

22. Upon closing on the Sale, whether with Cirrus or a third-party buyer, the Debtor will deposit into escrow an amount equal to the Cirrus Escrow Fund (as defined in the Third Amended Plan of Reorganization [ECF 192]) and pursuant to the terms thereof.

23. In the event Cirrus is the Winning Bidder, Cirrus reserves all rights to pursue a deficiency judgment or otherwise as provided in the loan documents.

Sale Order and Terms of Sale

24. Within 4 business days of execution of the Purchase and Sale Agreement, and

delivery of the non-refundable Secondary Deposit from the Buyer, the Debtor will file a motion with the Bankruptcy Court to approve the sale and the Buyer(s). Upon closing on a Sale, the Debtor will file a notice of sale closing with the Court and verification that the Cirrus Escrow Funds were deposited with an escrow agent (if applicable).

25. The sale will be for the Property and Assets only, and will not include the Hotel Operations, and all of the income and liabilities associated with the Hotel Operations will remain property of the Debtor.

26. The Buyer will not assume any contracts of the Debtor.

27. The sale is exempt from transfer taxes pursuant to 11 U.S.C § 1146.

Miscellaneous Provisions and Notice of Hearing

28. In the event that the Debtor files a motion to approve a purchase and sale agreement with a private third-party buyer prior to November 15, 2025, the Court will consider such motion, including cancellation of the Auction pursuant to the terms of the Sale Procedures.

29. Notwithstanding the entry of this Order and/or the relief granted hereunder, (a) the entry of this Order is without prejudice to, or waiver of, any claims, defenses, or any other rights and remedies relating to any claim for payment of a commission and/or expense reimbursement to which Hilco may be entitled in accordance with the Hilco Agreement (as defined in the Hilco Objection) and/or applicable bankruptcy and nonbankruptcy law, and (b) nothing in this Order shall constitute a finding or determination as to the allowance or disallowance of any claim that may be asserted by Hilco.

30. Notwithstanding paragraph 2 of this Order nothing in this Order is intended to release any lien held by the City of Miami for open violations on the Property or any obligations under the Unsafe Structures Panel Order.

31. The Court finds that the relief granted herein is in the best interest of the estate and the Debtor has established sound business judgment for such relief for all the reasons stated on the record at the Hearing.

32. The hearing to approve the Sale is scheduled for January 9, 2026 at 9:30 AM at C. Clyde Atkins U.S. Courthouse, 301 N Miami Avenue, Courtroom 8, Miami, FL 33128.

###

Submitted By:
Linda Worton Jackson, Esq.
**Pardo Jackson Gainsburg & Shelowitz, PL**
*Counsel for Debtors-in-Possession*
100 SE 2nd Street, Suite 2050
Miami, Florida 33131
Tel: 305-358-1001
Fax: 305-358-2001
ljackson@pardojackson.com
[Attorney Jackson is hereby directed to serve a conformed copy of this order on all interested parties and file a certificate of service conforming with Local Rule 2002-1(F).]