UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

BH DOWNTOWN MIAMI, LLC and
340 BISCAYNE OWNER LLC

Debtors.
_____/

Case No. 24-23028-LMI

Chapter 11

(Jointly Administered)

### DEBTORS' MOTION FOR PROTECTIVE ORDER AND OBJECTION TO REQUESTS FOR PRODUCTION

Debtors, 340 Biscayne Owner LLC and BH Downtown Miami, LLC (together, the "Debtors"), by and through undersigned counsel, and pursuant to Local Rule 7026-1(E)(3), hereby file this Motion (the "Motion") for Protective Order and Objection to Creditors', Cirrus 340BB Lender LLC and Cirrus Real Estate Funding LLC (together, "Cirrus" or "Creditors"), *First Request for the Production of Documents to 340 Biscayne Owner LLC* and *First Request for the Production of Documents to BH Downtown Miami, LLC*, both served October 26, 2025 (collectively, the "Requests"), and in support state as follows:

### INTRODUCTION

On October 26, 2025, Cirrus served discovery on the Debtors seeking all communication and documents related to the Debtors' sale and refinancing efforts and valuations. The Requests are virtually identical to requests Cirrus served in August 2025 in connection with the Disclosure Statement, and for which the Court granted *Debtors' Motion for Protective Order and Objection to Notices of Rule 2004 Examination Duces Tecum* (the "Prior MFPO") [Dkt. No. 158]. At the hearing on the Prior MFPO, Cirrus argued the discovery was necessary for approval of the Disclosure Statement, which argument was rejected by the Court. Now Cirrus is once again seeking the same documents and communication from first five requests in its August 2004

1

Notices (the "2004 Requests"), under Rules 7026 and 7034 instead of Rule 2004, and they are now claiming this discovery is necessary for confirmation. At the September hearing to address the Rule 2004 Requests, Cirrus was unable to articulate a reason why they needed "exact details" regarding sales efforts. *See*, Transcript of September 10, 2025 Hearing, 15:3-5. Now, several months later Cirrus is still unable to articulate any reason they need exact details regarding sales or refinancing efforts in advance of the auction contemplated in the Plan and Disclosure Statement. As further detailed below, the Court should grant Debtors' Motion because (i) Cirrus' Requests are not relevant to consideration of confirmation of the Plan, (ii) the documents sought are subject to confidentiality agreements, (iii) disclosing this information will chill the auction process, (iv) the documents are sought solely to harass the Debtors, (v) the discovery is not proportional to the needs of this case, i.e. the cost of production does not outweigh the need for the documents, and (vi) releasing the documents to Cirrus would give Cirrus an unfair advantage as a bidder at the auction.

**BACKGROUND**

1. On December 13, 2024 ("Petition Date"), the Debtors each filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code.

2. The Debtors are operating their businesses and managing their affairs as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. As of the date hereof, no creditors committee has been appointed. In addition, no trustee or examiner has been appointed.

4. On October 3, 2025, Debtors filed their *Third Amended Joint Plan of Reorganization of 340 Biscayne Owner LLC and BH Downtown Miami, LLC* (the "Plan") [Dkt. No. 192] and their *Third Amended Disclosure Statement* (the "Disclosure Statement") [Dkt. No. 193]. The Plan provides for (a) the sale of the Debtors' property by certain dates specified in the

2

Plan, (b) a deadline for completion of an auction of the property and closing on the sale, (c) payment of Cirrus' allowed secured claim from the proceeds of the sale, and (d) a waterfall distribution to creditors.

5. On October 8, 2025, the Court entered its *Order (I) Approving Disclosure Statement; (II) Setting Hearing on Confirmation of Plan; (III) Setting Hearing on Fee Applications; (IV) Setting Various Deadlines; and (V) Describing Plan Proponent's Obligations* [Dkt. No. 195] (the "Order"). The hearing on confirmation of the Plan is scheduled for December 11-12, 2025.

6. On October 10, 2025, 340 filed its *Motion to Approve (A) Sale of Assets Free and Clear of All Liens, Claims and Encumbrances Pursuant to 11 U.S.C. §§ 363(F) and 105, (B) Auction Procedures, (C) Closing of Hotel Operations, (D) Approving Form of Purchase and Sale Agreement; (E) Scheduling Dates to Conduct Auction and Hearing to Consider Final Approval of Sale and (F) for Related Relief* [Dkt. No. 197], and its *Application to Employ Concierge Auctions, LLC as Auctioneer* [Dkt. No. 196].

7. By Order dated October 23, 2025, the Court approved Concierge Auctions, LLC as the Auctioneer. [Dkt. No. 217].

8. On November 7, 2025, the Court entered its *Order Granting Debtor's Motion to Approve (A) Sale of Assets Free and Clear of All Liens, Claims and Encumbrances Pursuant to 11 U.S.C. §§ 363(F) and 105, (B) Auction Procedures, (C) Closing of Hotel Operations, (D) Approving Form of Purchase and Sale Agreement; (E) Scheduling Dates to Conduct Auction and Hearing to Consider Final Approval of Sale and (F) for Related Relief* [Dkt. No. 195] (the "Auction & Sale Order").

9. Pursuant to the Auction & Sale Order, the auction of the Debtor's property will

open on December 3, 2025 and will end with a live auction on December 17, 2025 (the "Auction"). The Auction & Sale Order also provides that Cirrus will have a credit bid in the amount of One Hundred and One Million Five Hundred Thousand Dollars ($101,500,000.00) (the "Credit Bid Amount") and shall be entitled to credit bid up to the Credit Bid Amount at the Auction.

10. On October 26, 2025, Cirrus served their Requests seeking production of confidential communication and documents related to prior sale negotiations and valuations purportedly to determine whether to file an objection to the Plan. Copies of the Requests are attached hereto and incorporated herein as **Composite Exhibit A.**

11. However, as of the date hereof, Cirrus has never articulated to the Debtors or undersigned counsel any objections to any provision of the Plan, any basis upon which it would support the Plan, or any willingness to even discuss the terms of the Plan. Cirrus' sole focus has been on developing an objection to defeat confirmation of the Plan to the detriment of the estate.

12. On October 28, 2025, Cirrus also served the Debtors with two separate *Notices of Rule 2004 Examination Duces Tecum* [Dkt. Nos. 219 and 220] requesting other documents under Rule 2004 related to the confirmation hearing. While the Debtors believe the serving of a Rule 2004 Notice was improper, the Debtors are not objecting to the production of documents sought under that request and will produce the documents requested.

## BASIS FOR RELIEF AND RELIEF REQUESTED

13. Debtors object to the Requests and seek entry of an order protecting Debtors from the discovery sought therein.

14. Pursuant to Federal Rule of Civil Procedure 26(c), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"

15. Likewise, Local Rule 7026-1(E)(3) permits parties to seek a protective order to

prohibit, limit or reschedule a discovery request.

16. Here, the documentation sought by Cirrus serves no legitimate purpose, and is an improper attempt to harass, annoy and impose an undue burden and expense on the Debtors and the Estate, to obtain access to confidential information related to the Debtors' efforts to market and sell the Property, and to impede the Debtors' efforts to negotiate effectively with buyers and conduct a fair auction.

17. The documentation sought in the Requests includes, *inter alia*, the following:

   a. all documents and communications related to appraisals, analyses, valuations, or opinions regarding the fair market value of the Property and all communication between or among Bomeny, Hilco, Auctioneer and/or Aimbridge regarding the same;

   b. all documents and communication relating to the marketing of the property, including drafts of marketing plans, offering memoranda, and advertisements;

   c. all documents and communications related to efforts to refinance;

   d. all documents and communications with potential and actual bidders;

   e. all documents and communications related to draft transaction documents, offers, bids, letters of intent, or purchase agreements for the Property, Communications with potential bidders, and internal evaluations of the potential bidders and/or bids; and,

   f. copies of any agreements executed by prospective or actual bidders for the Property and all documents and communication related thereto.

18. Notably, the Requests are virtually ***identical***[1] to requests 1-5 from the 2004 Notices

---

[1] The only difference between the requests is that Cirrus now added a request for documents from the Auctioneer and communication with the Auctioneer.

Cirrus served in August 2025 which were rejected by the Court in its *Order Granting Debtors' Motion for Protective Order and Objection to Notices of Rule 2004 Examination Duces Tecum* [Dkt. No. 168].

19. As Cirrus is well aware, the information sought in the Requests is subject to confidentiality agreements. As previously stated in the Prior MFPO and at the hearing to consider the MFPO, disclosure of this highly confidential information would ***completely*** undermine the Debtors' continuing efforts at a sale or auction and would also discourage any bidder from participating in this ***or any future*** bankruptcy sale processes, knowing that a lender or other creditor could obtain their confidential communications, offers, the results of an evaluation of their financial ability and other information sought by Cirrus.

20. Once purchasers (or potential purchasers) are aware of one another and learn of each buyer's offers and negotiation positions, and the buyers have access to the Debtors' internal and external communication regarding the sale, competing bids, the value of the property and other matters requested by Cirrus, they will be armed with very valuable information, which would alter the negotiation positions of the buyers and Debtors, and it would certainly affect their strategy, offers and willingness to close.

21. Moreover, each offer, purchase agreement, and letter of intent negotiated or even entertained contained a confidentiality clause and/or was subject to a separate confidentiality agreement with Debtors. Such prospects expect and are entitled to confidentiality, even if a purchase agreement was not ultimately signed, and Debtors asked for and expect confidentiality from the prospects as well.

22. To expect Debtors to (i) review each nondisclosure agreement and each offer (ii) determine the confidentiality provision that was included in each document and the restrictions

that must be enforced, and/or (iii) notify the buyer that their information is subject to the Request to give them the opportunity to respond, is not only a waste of estate resources, it amounts to nothing more than a tool for harassing the Debtors.

23. Further, much of the communication was between the Debtors and counsel, and reviewing the communication for privilege, would be time consuming and an enormous cost to the estate.

24. The Debtors' brokers also investigated each potential buyer to determine, *among other things,* their financial ability to close. It is hard to imagine that Cirrus needs the "internal evaluations of the potential bidders and/or bids" to decide whether to vote to accept the Plan or any other reason they would need to have this information that would justify the damage it would do to the Estate, the auction, and the bidders.

25. Moreover, if the information was used in any objection to the Plan or at the confirmation hearing, it would certainly chill the bidding at the auction, which will be ongoing at the time of the filing of any objection and the confirmation hearing. The auction is already being marketed and advertised, and the auction will occur between December 3, 2025 and December 17, 2025. So, the use of this information at the confirmation hearing on December 11 and 12 would certainly have an enormous impact on the final days of the auction.

26. There is simply no reason that Cirrus needs the information about the buyers, the analysis, marketing, evaluations of potential bidders or any of the other documents they request – **unless, of course, Cirrus intends to use this information to gain an unfair advantage over other bidders at the Auction.**

27. Cirrus has expressed its intent to bid at the auction and has a Credit Bid to participate. If Cirrus knows exactly what other bidders have submitted already, which bidders

have expressed interest in the property prior to the Auction, and the maximum each bidder chose to bid prior to the Auction, and has access to the Debtors' negotiations with those bidders and Debtors' internal evaluation of the bidder's ability to close, as well as the terms that were problematic or important to that bidder, Cirrus will have a huge advantage at the Auction over other bidders.  And, any bidder who is lucky enough to see any objection by Cirrus using the information or to attend the confirmation hearing and hear Cirrus' use of this information days before the conclusion of the auction would also have a similar advantage over other bidders who did not observe the proceedings or have the same access to the information about other bidders and valuations.

## **CONCLUSION**

28.     Cirrus' Requests amount to nothing more than tilting at windmills to gain an unfair advantage at the Auction.

29.     Cirrus has steadfastly refused to articulate any objection to the terms of the Plan, opting instead to seek unnecessary discovery to enable it to put itself in the best possible position to bid at the auction and ensure that no one else gets the property by compromising the Auction process.

30.     The discovery Cirrus seeks is completely unwarranted in a case such as this, where the Debtors have proposed a liquidating plan and have scheduled an Auction to take place, and Cirrus has been authorized to credit bid.

31.     The Debtors object to each and every Request for all the reasons stated herein.

32.     For these reasons, the Debtors respectfully request that the Court issue a protective order in accordance with the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and Rules of this Court.

## GOOD FAITH CERTIFICAITON

33. Prior to the filing of this Motion, pursuant to Local Rule 7026-1(F), undersigned counsel conferred with counsel for Cirrus in a good faith effort to resolve the issues raised, and despite such efforts, has been unable to do so. Attached as **Exhibit B** is the communication that occurred between counsel.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order (i) granting this Motion; (ii) sustaining the Objection; and (iii) granting such other and further relief as is necessary and proper.

Dated: November 9, 2025

        Respectfully submitted,

        **Pardo Jackson Gainsburg & Shelowitz, PL**
        *Counsel for Debtors*
        *BH Downtown Miami, LLC and 340 Biscayne Owner LLC*
        100 Southeast 2nd Street, Suite 2050
        Miami, Florida 33131
        Telephone: (305) 358-1001
        Facsimile: (305) 358-2001
        Email: LJackson@pardojackson.com
               LLovell@pardojackson.com
               sramos@pardojackson.com

By: */s/ Linda Worton Jackson*
     Linda Worton Jackson
     Florida Bar No. 843164
     Linsey M. Lovell
     Florida Bar No. 121581

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the Court's CM/ECF system upon those registered to receive electronic service on the 9th day of November, 2025.

By: */s/ Linda Worton Jackson*
    Linda Worton Jackson