**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:                                                    Case No. 24-23028-LMI

BH DOWNTOWN MIAMI, LLC and
340 BISCAYNE OWNER LLC                    Chapter 11

            Debtors.                          (Jointly Administered)
_____ /

**DECLARATION OF CRISTIANE BOMENY**
**IN SUPPORT OF CONFIRMATION OF PLAN OF REORGANIZATION**

I, Cristiane Bomeny, submit this declaration ("Declaration") pursuant to 28 U.S.C. § 1746

in support of confirmation of the *Third Amended Joint Plan of Reorganization* filed by Debtors

340 Biscayne Owner LLC ("340") and BH Downtown Miami, LLC ("BH") (collectively,

"Debtors"), dated October 3, 2025 (the "Plan") [Dkt. No. 192][1] and its accompanying *Third*

*Amended Joint Disclosure Statement*, dated October 3, 2025 (the "Disclosure Statement") [Dkt.

No. 193], and state as follows:

## I.      INTRODUCTION

1.      My name is Cristiane Bomeny. I am over 18 years of age and fully competent to

make this declaration.

2.      I am the President of Winterland Property LLC ("Winterland" or "Debtors

Manager"), which serves as the manager for 340 and BH, the Debtors in the above-styled Chapter

11 Case.

3.      I have more than 20 years of experience in real estate development and acquisition,

during which I have led complex hospitality, residential, shopping center, and mixed-use projects

---

[1] Capitalized terms used herein and not otherwise defined shall have the same meaning as attributed to them in the
Plan, or if not defined in the Plan, in the Disclosure Statement.

across multiple jurisdictions. My responsibilities have included acquisitions, due-diligence oversight, concept and development planning, financing negotiation, procurement, project management, crisis management, innovation initiatives, sustainability strategies, and long-term asset operations for portfolios in the U.S., Latin America, Europe, and Asia.

4.     I make this Declaration in support of confirmation of the Plan.  I am familiar with the terms and conditions of the Plan, the Disclosure Statement, and the documents related thereto, having participated in the negotiations and development thereof.

5.     I am authorized to submit this Declaration on behalf of the Debtors.  The statements set forth below are true and correct to the best of my knowledge, information, and belief, and if called to testify to those statements, I would do so competently.

6.     As President of Debtors' Manager, I have been involved in the day-to-day administration and operation of the Debtors, and I am familiar with the Debtors' business operations and assets.  I have personal knowledge of the Debtors' books and records, and the Debtors' financial and operational affairs. Except as otherwise indicated, all statements in this Declaration are based upon: (a) my personal knowledge; (b) my review of the Debtors' books and records, relevant documents and other information prepared or collected by the Debtors' employees or advisors; (c) my view, based upon my experience and knowledge of the Debtors' businesses and financial condition; and (d) as to matters involving bankruptcy law or rules or other applicable laws, my reliance on the advice of Debtors' counsel. In making the statements herein based upon my review of the Debtors' books and records, relevant documents and other information prepared or collected by the Debtors' employees or professionals, I have relied upon these employees and/or professionals to accurately record, prepare and collect any such documentation and other information.

7.      As President of Debtors' Manager, I have been involved in all aspects of the Debtors' Chapter 11 Case, including, without limitation: (i) an analysis of the Debtors' assets, liabilities and performance; (ii) negotiations with creditors; (iii) negotiations with potential buyers and lenders for the Property; (iv) the review of, and determination of, whether to assume or reject contracts; (v) the investigation and review of third party litigation claims; (vi) the formulation and structuring of the Plan; (vii) the development of the Disclosure Statement, and all relevant exhibits and appendices attached thereto; and (viii) the overall strategy in the Bankruptcy Case. I have reviewed the Plan and the Disclosure Statement for accuracy and completeness.  In addition, as a part of my duties, I have supervised and worked closely with the Debtors' professionals that have been involved in this Chapter 11 Case.  I was directly responsible for supervising the preparation of financial projections and the liquidation analysis contained in the Plan and the Disclosure Statement, and I reviewed them for accuracy and completeness.

8.      I do not have any equity interest in the Debtors, and I receive no compensation from the Debtors. I have sole authority to make decisions for the Debtors and their estates, subject to the Bankruptcy Code, Rules, and Guidelines.

## II.    INTRODUCTION

**A.    Debtors' Corporate Structure, Description of Debtors' Business, Historical Financial Performance, Financial and Management Structure, and Reasons for Filing Chapter 11**

### i.    Overview of Debtors' Corporate Structure

9.      340 is a limited liability company organized under the laws of the State of Delaware.

10.     BH is a limited liability company organized under the laws of the State of Delaware and owns 100% of the outstanding membership interests in 340. BH's equity interest in 340 is BH's only asset.

3

      ii.      **Property Ownership & Hotel Operations, Finances, and Management**

11.      340 is titleholder to the real property located at 340 Biscayne Boulevard in Miami, Florida (the "Property") as well as the hotel located thereon, commonly known as Holiday Inn Port of Miami-Downtown, (the "Hotel"). Prior to the Petition Date, the Property was appraised with a value of over $200 Million.

12.      340 has owned and operated the Hotel since 2015. While going through the process of Redevelopment, 340 continues to operate the Hotel under the Holiday Inn flag, an IHG Hotels & Resorts Brand, pursuant to that certain License Agreement dated May 31, 2016 (the "License Agreement") entered into by and between Debtor and Holiday Hospitality Franchising, LLC ("HHF"), as amended.

13.      Pursuant to the License Agreement, 340 pays HHF a monthly fee which includes, *inter alia*, a royalty on gross rooms revenue.

14.      340 contracts with Aimbridge Hospitality Holdings, LLC ("Aimbridge" or the "Operator") to handle day-to-day operations of the Hotel, pursuant to that certain Hotel Management Agreement dated May 18, 2016 (the "Management Agreement").

15.      Pursuant to the Management Agreement, all Hotel Employees ("Hotel Employees") are employees of the Operator, and all compensation of the Hotel Employees is an operating expense, borne by 340, and paid in advance to Operator upon demand.

16.      The Hotel offers 200 rooms and over 2,000 square feet of meeting space, as well as onsite dining. The Hotel's proximity to the Port of Miami, Kaseya Center, and Downtown Miami makes it an attractive destination for business and leisure travelers.

17.      During the Chapter 11 case, all expenses of the Hotel, including without limitation, insurance and real property taxes, have remained current and the Hotel has generated a profit for the benefit of creditors and equity holders.

### iii.    The Chapter 11 Case

18.    On December 13, 2024 ("Petition Date"), the Debtors each filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since that time the Debtors have operated as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

19.    As of the date hereof, no creditors committee has been appointed. In addition, no trustee or examiner has been appointed.

20.    On April 1, 2025, the Debtors filed a complaint [Adv. Dkt. No. 1] against Cirrus in the adversary *BH Downtown Miami, LLC et al v. Cirrus 340BB Lender LLC et al,* Adversary No. 25-0110-LMI (the "Cirrus Litigation"). On November 7, 2025, the Debtors filed their Second Amended Complaint [Adv. Dkt. No. 123] in the Cirrus Litigation, alleging breach of contract, fraud in the inducement, violation of Florida Statutes Chapter 687, breach of implied covenant of good faith and fair dealing, and an objection to the Claims filed by Cirrus. The Cirrus Litigation is scheduled to go to trial on February 9, 2026, and is the only adversary proceeding commenced in the Chapter 11 Case.

21.    The Debtors commenced the Chapter 11 Case with the primary purpose of paying its creditors by either: (a) refinancing the secured debt held by Cirrus, or (b) consummating the sale of the Property and substantially of their assets. To that end, the Debtors conducted a marketing and sale process of the Property pursuant to several orders of the Court.

22.    On October 10, 2025, Debtors filed their *Application to Employ Concierge Auctions, LLC as Auctioneer* to conduct an auction of the Property (the "Retention Application") [Dkt. 196], and a *Motion To Approve (A) Sale Of Assets Free And Clear Of All Liens, Claims And Encumbrances Pursuant to 11 U.S.C. §§ 363(F) and 105, (B) Auction Procedures, (C) Closing Of Hotel Operations, (D) Approving Form Of Purchase And Sale Agreement; (E) Scheduling Dates*

*To Conduct Auction And Hearing To Consider Final Approval Of Sale and (F) For Related Relief* (the "Auction Motion") [Dkt. No. 197]. The Retention Application and Auction Motion sought authority to conduct an auction of the Property. Pursuant to the Court's Amended Order Granting the Auction Motion [Dkt. No. 238], entered November 14, 2025, the Debtor is authorized to sell the Property and other Assets by an auction which opened online and will end with a live auction on December 17, 2025 in New York City (the "Auction"). The Winning Bid and any Back Up Bid will be announced at the conclusion of the Auction. The opening bid at the Auction was $72 Million, and the Auctioneer advised me that bids are generally very low at the beginning of the auction and that they increase dramatically on the last day of the auction when it is live.

23.    Based on my experience, I believe that the Auction contemplated for the Property offers the best option for the Debtors' estates.

24.    The Debtors consistently managed the Chapter 11 Case in good faith and in the manner that was in the best interest of creditors and parties in interest. Among other things, the Debtors filed all Monthly Operating Reports, paid all United States Trustee ("UST") fees, complied with all UST Guidelines, delivered all the monthly reports required to be sent to Cirrus under the Order Allowing Use of Cash Collateral, worked with all of the Debtors' creditors to reach agreement on all matters (other than Cirrus), operated the Hotel without interruption, paid all insurance and taxes required on a timely basis, managed the recertification issues with the City of Miami, worked to sell or refinance the Property, litigated only where it was in the best interest of the estates, complied with all of the orders of the Court, the provisions of the Bankruptcy Code and the Bankruptcy Rules, and filed the Plan within 8 months of the Petition Date, with confirmation anticipated within a year from the Petition Date.

25.    On October 3, 2025, Debtors filed their Plan and Disclosure Statement. On October

7, 2025, the Court entered its *Order (i) Approving Disclosure Statement; (ii) Setting Hearing on Confirmation of Plan; (iii) Setting Hearing on Fee Applications; (iv) Setting Various Deadlines; and (v) Describing Plan Proponent's Obligations* [Dkt. No. 195] (the "Disclosure Statement Order"), which, among other things: (a) approved the adequacy of the Disclosure Statement; (b) (i) scheduled a combined hearing to consider confirmation of the Plan and professional fee applications, (ii) established November 26, 2025 as the deadline to file objections to the confirmation of the Plan, (iii) approved the solicitation procedures as described therein with respect to the Plan, which included establishing November 26, 2025, as the Voting Deadline, approved the form and manner of service of the Ballots, (iv) approved the form and manner of service of certain notices related to the Plan, and (v) granted related relief.

26.    As reflected in the certificate of service filed with the Court [Dkt. No. 269], and in compliance with the Disclosure Statement Order, on October 23, 2025, the Debtors provided notice of the date and time of the confirmation hearing set forth in the Disclosure Statement Order on all creditors and parties in interest and solicited acceptances of the Plan. The Plan was filed in good faith and, to the best of my knowledge, the Debtors have complied in good faith with all requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the Bankruptcy Court and the solicitation procedures adopted by the Court in the Disclosure Statement Order.

27.    Throughout the Chapter 11 Case, the Debtors have been assisted by certain professionals who helped the Debtors successfully operate in Chapter 11 and exit the bankruptcy pursuant to the Plan.  Pursuant to several orders of the Court [Dkt. Nos. 53, 87, 89, 117, 118, 217, and 254], Debtors have employed legal, accounting, and finance professionals, real estate advisors, and auctioneers ("Debtors' Professionals" or "Professionals").  Each of the Professionals has provided services in good faith, pursuant to direction from the Court and the Debtors, and in

compliance with the Court's orders, the UST Guidelines, and the local and federal rules of the Bankruptcy Court.  I believe the Debtors' Professionals have performed all of their duties in accordance with the best interests of the Debtors and their estates.  I am aware that the Debtors' Professionals devoted a substantial amount of time to handling matters in this Chapter 11 Case and in the Cirrus Litigation, often on an expedited basis, and continue to work diligently and cooperatively for the benefit of the Debtors, and their Estates.  I further believe the Professionals performed their services economically and efficiently, and obtained results that benefited the Debtors, their estates, and their stakeholders.

### III.    THE PLAN AND DISCLOSURE STATEMENT

28.    The primary purpose of the Plan is to effectuate the orderly wind down of the Debtors' affairs by distributing the Estates' Assets.

29.    The Plan includes the following principal features: Upon the sale of the Property by 340, after reserving funds reasonably necessary for General Administrative claims, costs, UST fees, and Disputed Claims, 340 will distribute all distributable cash or other property to Holders of Allowed Claims.  The remaining property will be distributed to BH, as the sole equity holder of 340, which will then be distributed to the creditors of BH before the Equity Holders of BH (the "Equity Holders") receive any distribution.  The Equity Holders of each Debtor will not receive any equity distribution until the creditors of each Debtor is paid in full.

30.    As a result of the Plan, the Debtors anticipate all Secured, General Administrative, Priority and Statutory claims will be paid in full, and that Debtors will either make payment in full or a substantial distribution to General Unsecured Creditors.

31.    On the Effective Date, the Debtors will have sufficient Cash from Hotel operations after payment of all Hotel related expenses to pay all Allowed Administrative and Priority Claims.  We anticipate that the total Allowed Administrative and Priority Claims (other than Professional

Fees) will be $106,659.68. Therefore, based on our projections, there will be sufficient funds to pay the Allowed Administrative and Priority Claim in full on the Effective Date regardless of the outcome of the Auction.

32.     In the event the Chapter 11 Case is dismissed or converted to Chapter 7, it is unlikely that the holders of Allowed General Unsecured Claims or Equity Interests would receive any distributions. Therefore, the Plan provides the potential for more value to Creditors and Equity Holders than if this Case was converted to Chapter 7.

33.     Debtors' Manager will continue to manage the Debtors, the Sale, the Cirrus Litigation, the Plan and the Distribution and all aspects of the Chapter 11 Case and Plan consummation until all Distributions have been made. The Manager will continue to serve without any compensation. The corporate structure of the Debtors will remain unchanged.

### IV.    COMPLIANCE WITH SECTION 1129(a) REQUIREMENTS

34.     I participated in the development of and negotiations of the Plan. I understand that the Plan must satisfy section 1129 of the Bankruptcy Code in order for the Plan to be confirmed. Based on my understanding of the Plan and the Bankruptcy Code, I believe the Plan satisfies the confirmation requirements of sections 1129(a) and (b) of the Bankruptcy Code and should be confirmed.

**A.     Liquidation Analysis – The Plan is in the Best Interest of Creditors in Accordance with 1129(a)(7)**

35.     Section 1129(a)(7) of the Bankruptcy Code requires a determination that the Plan is in the best interests of the holders of impaired claims that have not voted to accept the Plan. It is my understanding that the best interests test requires that each holder of a claim or interest either accept the Plan or receive or retain property having a present value, as of the Effective Date of the Plan, not less than the amount such holder would receive or retain if the debtor were liquidated in

9

a hypothetical liquidation under chapter 7 of the Bankruptcy Code.  Here, each Class that is impaired voted to accept the Plan.

36.     As set forth in the Liquidation Analysis attached to the Disclosure Statement as Exhibit B, I believe that a Chapter 7 liquidation of the Debtors would result in no distributions to the creditors other than Cirrus and no distributions to Equity Holders.  In a forced liquidation, Cirrus would likely foreclose on the Property or buy the Property for the amount of its debt, realize a windfall, and the other Creditors and Equity Holders would receive nothing.

37.     Additionally, a conversion would result in additional fees and costs for a trustee and his/her professionals, which would be unnecessary expenses and the equity in the Debtors would be lost.

38.     The methodology I used in preparing or supervising the preparation of the Liquidation Analysis was based on the appraised value of the Property, my real estate experience, a review of the claims, and discussions with my Hotel Manager, financial advisors and legal counsel.

39.     Based on the Liquidation Analysis, I believe that the Plan satisfies the "best interests tests" under section 1129(a)(7) of the Bankruptcy Code.

**B.     Feasibility – The Plan is Feasible and has a Reasonable Likelihood of Success, as Required for Confirmation by 1129(a)(11)**

40.     Section 1129(a)(11) of the Bankruptcy Code requires the Court to conclude that the Plan is "feasible," in that confirmation of the Plan is not likely to be followed by the liquidation or need for further reorganization of the Debtors, and the Plan has a reasonable probability of success.

41.     I believe the Plan is feasible because it is a liquidating plan, and the Debtors will be able to meet all their obligations under the Plan. The Plan provides for an Auction of the Property and distribution of the Sales Proceeds and all available Cash.  On the Effective Date, the

Debtors will have sufficient Cash available from the Hotel operations to make all payments required to be made on such date to pay the Allowed Professional Fees, Allowed Administrative Claims and Allowed Priority Claims and any US Trustee Fees in full regardless of the outcome of the Auction.

42.     The proceeds from the sale of the Property will be sufficient to pay the Allowed Secured Claim of Cirrus in full, and any excess proceeds will be used to make the other distributions to creditors and Equity Holders in accordance with the Plan.  And, the Litigation Proceeds will be available to supplement any distributions to the General Unsecured Creditors.

43.     Accordingly, I believe that the Plan is feasible as the term is used in connection with confirmation of a liquidating chapter 11 plan. In addition, the Plan provides for the liquidation of the Assets of the Debtors and therefore there will not be a need for a further reorganization of the Debtors after confirmation of the Plan.

**C.     The Plan Complies with the Applicable Provisions of the Bankruptcy Code as Required by § 1129(a)(1).**

**i.     The Classifications in the Plan are proper under 11 U.S.C. §1122.**

44.     Section 1122 provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

45.     I understand that the classifications in the Plan are proper and in accordance with the standards set forth in section 1122 of the Bankruptcy Code. Specifically, Article III of the Plan provides for the separate classification into seven (7) Classes of Claims and Equity Interests as follows: (a) Class 1 (Allowed Secured Claims of Cirrus against 340); (b) Class 2 (Allowed Secured Claim of the City of Miami against 340); (c) Class 3 (Allowed General Unsecured Claims against 340); (d) Class 4 (Equity of 340); (e) Class 5 (Cirrus' Allowed Secured Claims against BH); (f)

Class 6 (Allowed General Unsecured Claims against BH); and (g) Class 7 (Equity).   The Administrative Claims, Professional Fee Claims, Priority Tax Claims and UST Fees are unclassified and their treatment is described in Article II of the Plan in accordance with section 1123(a)(1) of the Bankruptcy Code.

46.     In each instance of separate classification, the Plan classifies Claims based upon their different rights and attributes. As such, valid business, factual, and legal reasons exist for classifying separately the various Classes of Claims and Equity Interests created under the Plan. Additionally, each of the Claims or Equity Interests in each particular Class is substantially similar to the other Claims or Equity Interests in such Class. Accordingly, I believe that the Plan satisfies the requirements of section 1122 of the Bankruptcy Code.

**ii.     The Plan complies with the mandatory requirements of under 11 U.S.C. §1123(a).**

47.     Section 1123(a) mandates that a plan for an entity: (a) designate classes of claims and interests; (b) specify unimpaired classes of claims and interests; (c) specify treatment of impaired classes of claims and interests; (d) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim agrees to a less favorable treatment of such particular claim or interest; (e) provide adequate means for the plan's implementation; (f) provide for the prohibition of nonvoting equity securities and provide an appropriate distribution of voting power among the classes of securities; and (g) contain only provisions that are consistent with the interests of the creditors and equity security holders and with public policy.

48.     Based on my understanding of the requirements of section 1123(a), I believe that the Plan complies with each of the seven (7) requirements as follows:

a.   **11 U.S.C. § 1123(a)(1):** The Plan (Article III and Article IV) properly designates and classifies Claims and Equity Interests. Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Equity Interests

created under the Plan, the classifications were not made for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among holders of Claims or Equity Interests;

b. **11 U.S.C. § 1123(a)(2):** The Plan (Article III and Article IV) specifies any Claims that are not Impaired;

c. **11 U.S.C. § 1123(a)(3)**: The Plan (Article III and Article IV) specifies any Claims that are Impaired;

d. **11 U.S.C. § 1123(a)(4)**: The Plan provides for the same treatment for each Claim or Equity Interest in each Class;

e. **11 U.S.C. § 1123(a)(5):** The Plan (Article V) provides for adequate means of implementation. More specifically, the Plan provides for: (i) the allowance and disallowance of claims; (ii) specified distribution mechanisms and procedures; and (iii) the post-confirmation retention of jurisdiction by this Court as necessary in connection with the implementation and consummation of the Plan. Moreover, Distributions under the Plan will be funded with Cash, any Net Proceeds from the Sale of the Property and the Litigation Proceeds;

f. **11 U.S.C. § 1123(a)(6):** The Plan does not provide for the issuance of non-voting securities; and,

g. **11 U.S.C. § 1123(a)(7):** The Plan (Article V) provides that the Debtors shall continue to exist on or after the Effective Date solely for the purposes of satisfying the Debtors' obligations under the Plan, including making Distributions as required under the Plan and effectuating the wind down of the Debtors. The Plan further provides that Debtors' Manager will continue to serve without compensation to manage the Debtors, the Sale, the Cirrus Litigation, the Plan and the Distribution and all aspects of the Chapter 11 and Plan consummation until all Distributions have been made. Notwithstanding anything to the contrary in the Bankruptcy Rules or Local Rules of the Bankruptcy Court providing for earlier closure of the Chapter 11 Cases, when the Debtors' Cash, Sale Proceeds, and Litigation Proceeds have been distributed in accordance with the Plan, or at such earlier time as the Debtors deem appropriate, the Debtors shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

49.     Based upon the foregoing, I understand and believe that the Plan complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code (as well as other applicable provisions of the Bankruptcy Code and the Bankruptcy Rules) and, thus, satisfies the requirements of section 1129(a)(1).

### iii.    The Plan contains certain provisions permitted under 11 U.S.C. §1123(b).

50.     I understand that section 1123(b) of the Bankruptcy Code sets forth provisions that may be included in a chapter 11 plan. I believe each of the provisions included in the Plan are permissible under section 1123(b).

### D.    The Debtors have Complied with the Applicable Provisions of the Bankruptcy Code, as Required by § 1129(a)(2).

51.     As proponents of the Plan, the Debtors have complied with the applicable provisions of the Bankruptcy Code, including without limitation: (a) conducting the solicitation of votes on the Plan in a manner consistent with the Disclosure Statement Order and Section 1126 of the Bankruptcy Code; (b) obtaining approval of the Disclosure Statement; (c) complying with all orders of the Court; and (d) operating the Debtors' businesses within the confines established by the Bankruptcy Code and all Orders of the Court.

52.     The Disclosure Statement Order set October 27, 2025 as the deadline for the Debtors to serve the Solicitation Documents. On October 23, 2025, the Debtors solicited acceptances of the Plan and provided notice of the date and time of the Confirmation Hearing set forth in the Disclosure Statement Order to all creditors and parties in interest, as evidenced by the Certificate of Service filed with the Court [Dkt. No. 269].

53.     To the best of my knowledge and belief, the Debtors have complied with all of the provisions of the Bankruptcy Code and the Bankruptcy Rules governing notice, disclosure, and solicitation in connection with the Plan, the Disclosure Statement, and all other matters considered by the Bankruptcy Court in connection with this Chapter 11 Case. I further understand and believe that good, sufficient, and timely notice of the Confirmation Hearing and all other hearings in these Chapter 11 cases have been provided to all holders of Claims and Equity Interests and all other parties in interest to whom notice was required to have been provided.

54.     To the best of my knowledge and belief, the Debtors have complied with the requirements of section 1126 of the Bankruptcy Code. Claims in Classes 1, 2, 4,5 and 7 are not impaired under the Plan and as a result, I understand that those Classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. I further understand Classes 3 and 6 are impaired under the Plan and were solicited to vote, and as such received a copy of the Plan, Disclosure Statement, Confirmation Order and Ballot.

55.     The Debtors and their respective representatives, members, officers, employees, advisors, attorneys, and agents, as applicable, have solicited and tabulated votes on the Plan and have participated in the activities described in 11 U.S.C. § 1125 fairly, in good faith within the meaning of 11 U.S.C. § 1125(e), and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations, and are entitled to the protections afforded by 11 U.S.C. § 1125(e). The Debtors and each of their respective representatives, shareholders, managers, employees, advisors, attorneys, and agents, as applicable, have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such Distributions made pursuant to the Plan.

**E.     The Plan Satisfies the Remaining Requirements for Confirmation Set Forth in the Applicable Subsections of § 1129(a) of the Bankruptcy Code.**

56.     The Plan has been proposed in good faith and not by any means forbidden by law.

57.     The Debtors have provided that all payments made or to be made by the Debtors for services or for costs or expenses incurred in connection with the Chapter 11 Cases, including

all of the Allowed Professional Fee Claims, are subject to approval of the Court as reasonable. Among other things, the Plan contains appropriate procedures for filing applications for final allowance of compensation by Professionals.

58.     The Plan (Article V) provides that Winterland will continue to serve as Manager, without compensation, until all Distributions have been made.

59.     Each Class of Claims and Equity Interests has accepted the Plan or is not Impaired, except for Class 6, which has no Allowed Claims. Classes 1, 2, 4, 5 and 7 are Unimpaired under the Plan and, therefore, are deemed to have accepted the Plan. Classes 3 is Impaired and accepted the Plan, and Class 6 is Impaired but has no Allowed Claims.  At least one Class of Claims (Class 3) that is Impaired under the Plan has accepted the Plan without including the votes of Insiders. [See Certificate of Debtors on Acceptance of the Plan at Dkt. 275].

60.     The Plan provides for payment in full in Cash of each Allowed Administrative Claim (unless such holder agrees to less favorable treatment) and further provides for payment in full of any Priority Tax Claim.

61.     The Plan (Article II) provides that All Fees due under Section 1129(a)(12) of the Bankruptcy Code shall be paid as required by 28 U.S.C. Section 1930, or as ordered by the Court at Confirmation.

**F.      The Plan Also Satisfies the Requirements for Confirmation Set Forth in § 1129(b) of the Bankruptcy Code.**

62.     While I believe the Plan satisfies and complies with all applicable provisions of § 1129(a) of the Bankruptcy Code, to the extent that any Impaired Class of Claims or Equity Interests is found not to have accepted the Plan, the Plan also complies with 11 U.S.C. § 1129(b).

63.     The Plan provides that no junior Class of Claims or Interests shall receive Distributions or retain any Property under the Plan until the senior classes have been paid in full.

64.     The Plan further provides that Cirrus' Lien on the Property will attach to the Cirrus Escrow Fund pursuant to Section 363 of the Bankruptcy Code.

65.     As such, the Plan does not discriminate unfairly and is fair and equitable with respect to each Impaired Class of Claims or Equity Interests.

**G.      The Plan Satisfies the Requirements for Confirmation Set Forth in § 1129(b) – (d) of the Bankruptcy Code.**

66.     The Plan is the only Plan presented for consideration by the Court.

67.     The principal purpose of the Plan is not the avoidance of taxes or the application of section 5 of the Securities Act of 1933.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

## 28 U.S.C. § 1746 Declaration

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 8th day of December 2025.

_____
Cristiane Bomeny